IRENE C. KING v. MARY D. HANSON.

Opinion filed April 16, 1904.

**An Appeal From an Order Taken Within the Period Allowed by Law May be Had After Time to Appeal From a Judgment Has Expired.**

1. Under the statutes of this state, the remedies afforded by an appeal from a judgment and an appeal from an order refusing a new trial are independent remedies. The right to appeal from an order denying a motion for new trial may be exercised after the time for appealing from the judgment has expired, provided the appeal is

taken within the time limited by statute for appealing  from  such orders.

### Appeal — Time of Taking.

2.  Section 5605, Rev. Codes 1899, which prescribes the time for appealing from judgments and orders, grants a full period of sixty days after written notice thereof in which to appeal from orders. The additional time given by said section applies only to those orders which require the subsequent settlement of a statement of case for the purpose of a review upon appeal.

### A Married Woman Can Maintain Action for Alienation of Husband's Affections.

3.  In this state, and also in Minnesota, a married woman may maintain an action against another woman to recover damages for the alienation of the affections of her husband, and his consequent abandonment of her.

### Evidence of Adulterous Relation in State Where Such Action Does Not Lie, Proper.

4.  It was not error to admit evidence tending to show a continuation of the adulterous relation of the defendant and plaintiff's husband in Wisconsin, occurring after the latter had abandoned the plaintiff in Minnesota, although in Wisconsin the alienation of the affections of a husband does not constitute an actionable wrong.

### Where the Admission of Evidence Depends Upon Disputed Facts, the Dispute May Be Submitted to the Jury Under Proper Hypothetical Instructions.

5.  The preliminary question of the admissibility of evidence is for the court.  Where, however, the question of admissibility depends upon disputed facts, the court may submit the evidence to the jury, with proper hypothetical instructions upon the rules of law which shall govern them upon the different states of facts as they shall find them.

### Instructions.

6.  The instruction given in this case relative to the testimony of attorneys was not open to the criticism that it singled out, and cast discredit upon, the testimony of one of the witnesses for the defendant.

### Sequestration of Witnesses is Within the Discretion of the Court.

7.  It is within the discretion of the trial judge to exclude witnesses from the courtroom while other witnesses are testifying, and in this case there was no abuse of discretion in so doing.

**Exemplary Damages.**

> 8. In an action where exemplary damages may be awarded, it is proper to admit evidence of the defendant's wealth.

**Commitment of an Attorney in Progress of Trial — Procedure.**

> 9. An order of the trial court, made during the progress of the trial, punishing an attorney for contempt, is an independent order, and, as such, is appealable by the party aggrieved. Where the client of such attorney desires to urge the action of the court in punishing his attorney "as an irregularity in the proceedings of the court, * * * and abuse of discretion by the court, by which the defendant was prevented from having a fair trial," the application "must be upon affidavit," under section 5473, Rev. Codes 1899.

Appeal from District Court, Towner county; *Cowan,* J.

Action by Irene C. King against Mary D. Hanson (now Mary D. Thompkins). Judgment for plaintiff. Defendant appeals. Affirmed.

*Guy C. H. Corliss,* for appellant.

A wife cannot maintain an action against a person for alienating her husband's affections, unless her husband has been enticed from her. The gist of the action is not the loss of affection, but the loss of consortium. Betser v. Betser, 58 N. E. 249; Houghton v. Rice, 54 N. E. 843; Neville v. Gile, 54 N. E. 841; Humphrey v. Pope, 54 Pac. 847; Haynes v. Nowlin, 29 N. E. 389; 1 Bish. on Mar. & Div., sec. 1358; Ash v. Prunier, 105 Fed. 722; Lockwood v. Lockwood, 70 N. W. 784; Crocker v. Crocker, 98 Fed. 702; Kroessin v. Keller, 62 N. W. 438; Westlake v. Westlake, 34 Ohio St. 621; Bennett v. Bennett, 23 N. E. 17; Nichols v. Nichols, 134 Mo. 187; Clow v. Chapman, 28 S. W. 328; Mehrhoff v. Mehrhoff, 26 Fed. 13; Warren v. Warren, 50 N. W. 842.

It is only when the efforts to produce the unlawful result have been successful that an actionable wrong is committed. If there is no wrong under the laws of the state where the husband abandons the wife, there is no tort which can be enforced in any other jurisdiction. Debevoise v. Railroad Co., 98 N. Y. 377; Wooden v. Western N. Y. & R. R. Co., 26 N. E. 1050; Kohl v. Railroad Co., 10 So. 661; Carter v. Doode, 50 Ark. 155; Hyde, Admr., v. Wabash St. L. & P. Ry. Co., 16 N. W. 351, 47 Am. Rep. 820; Alexander v. Pennsylvania Co., 30 N. E. 69; DeHearn v. Railroad Co, 23 S.

W. 381; Western Union Tel. Co. v. Phillips, 21 S. W. 638; Alabama, etc., R. R. Co. v. Carroll, 11 So. 803.

Where acts of negligence occur, or are set in motion in one state, and the resulting wrong occurs in another, the act is characterized by the law of the latter. Alabama, etc., R. R. Co. v. Carroll, 11 So. 803; Simpson v. Stole, 17 S. E. 984; State v. Morrow, 18 S. E. 853; State v. Bailey, 36 N. E. 233; State v. Hall, 19 S. E. 602.

If the act of enticing the plaintiff's husband was consummated in Wisconsin, there is no ground for action against the defendant, it being conceded that no such action lies in that state.

Section 5653, subdiv. 1, Rev. Codes 1899, is a mere continuation of the common law and relates only to secret communication between husband and wife. If the third person is present when a communication is made, or a letter containing it is exhibited to a third party or its contents stated to him, the case is not within the statute; and husband or wife can be compelled to testify to the same. State v. Center, 35 Vt. 379; Hagerman v. Wigent, 65 N. W. 756; Gannon v. People, 21 N. E. 525; McCague v. Miller, 36 Ohio St. 595; Higbee v. McMillan, 18 Kans. 133; Long v. Martin, 71 Mo. App. 569; Ward v. Oliver, 88 N. W. 631; Sessions v. Trevitt, 39 Ohio St. 259; Reynolds v. State, 46 N. E. 31; Mainerd v. Bender, 91 Am. Dec. 291; Fay v. Guiymon, 131 Mass. 31; Commonwealth v. Griffin, 110 Mass. 181; State v. Gray, 39 Pac. 1050; Mercer v. Patterson, 41 Ind. 440; Lyon v. Prouty, 28 N. E. 908.

It is the province of the court to determine all questions of fact, preliminary to the admission of any instrument or paper, or the testimony of any witness without reference to the jury. Bartlett v. Smith, 11 M. & W. 483; Gorton v. Hadsell, 9 Cush. 511; 1 Thompson on Trials, sections 318, 324; Jenkins v. Davis, 10 Q. B. 314; Chouteau v. Searcy, 8 Mo. 733; Cook v. Mix, 11 Conn. 432; Robinson v. Ferry, 11 Conn. 460; Witter v. Latham, 12 Conn. 392; Coleman v. Wolcott, 4 Day, 388; 1 Starkie on Evid. 354; Donelson v. Taylor, 8 Pick. 390; Wickliffe v. Lynch, 36 Ill. 209; State v. Michael, 19 L. R. A. 605; Commonwealth v. Reagon, 56 N. E. 577; Tabor v. Staniels, 2 Cal. 240; Mead v. Harris, 60 N. W. 284; Bowdle v. Railway Co., 61 N. W. 529.

This section, 5653, does not declare that a communication between husband and wife shall not be received in evidence; but that neither without the other's consent shall be *examined* as to such communication. State v. Hoyt, 47 Conn. 518; State v. Buffington, 20 Kans.

599; Lloyd v. Pennie, 50 Fed. 4; 1 Greenleaf on Ev., section 254a; 1 Whart. Ev., section 427.

A third party is not liable to a wife, under the laws of North Dakota, for enticing away her husband. Section 2718 provides: "The rights of personal relation forbid: 1. The abduction of a husband from his wife. 2. The abduction or *enticement* of a wife from her husband." There is an interference with the rights of the husband when the wife is either abducted *or enticed* from him; but there is no interference with the rights of the wife unless the husband is abducted, that is carried away by force, from her. Humphrey v. Pope, 54 Pac. 847, to the contrary is not a sound decision. Courts will not enforce a cause of action for a tort arising under a foreign law, because the cause of action is opposed to the policy of the jurisdiction where the suit is brought. Gardner v. Thomas, 14 Johns. 134; Johnson v. Dalton, 1 Cow. 543; Railroad Co. v. Jackson, 33 S. W. 857; Railroad Co. v. Richards, 68 Tex. 375; Railroad Co. v. McCormick, 71 Tex. 660; Ash v. Railroad Co., 72 Md. 144; Dale v. Atchison, T. & S. F. R. Co., 47 Pac. 521; Matheson v. Kansas City, Ft. S. & M. R. Co., 60 Pac. 747; Burdick v. Freeman, 46 Hun, 138; Maloney v. Dows, 8 Abb. Pr. 316; Whart. Conflict of Laws, section 478.

It was error to receive evidence of defendant's wealth and charge the jury to consider it in fixing the amount of damages. Hunt v. R. Co., 26 Iowa, 363; Guengerech v. Smith, 34 Iowa, 348; Southern Car Co. v. Adams, 32 So. pp. 503-507; Givens v. Berkley, 56 S. W. 158; Field on Damages, 127; Kniffen v. McConnell, 30 N. Y. 285.

*Burke & Middaugh, Welch, Hayne & Hubachek,* for respondent.

The trial judge has discretion to exclude some of the witnesses and allow others to remain. 1 Greenleaf on Ev., 432; Chicago. B. & Q. R. Co. v. Kellogg, 74 N. W. 403; Wilson v. State, 52 Ala. 299; People v. McCarty, 117 Cal. 65, 48 Pac. 984.

The court did not in its charge, single out the testimony of Mr. Davis, an attorney in the case, as alleged by counsel. It is true, it is of doubtful propriety for an attorney to be a witness without wholly withdrawing from the case, and he is open to criticism and suspicion unless he does. 1 Greenleaf on Ev., 386; Best on Ev., 184; Ross v. Demos, 45 Ill. 447; Blashfield on Instr., 225; Wiseman v. Cornish, 53 N. C. 218; Com. v. Pease, 137 Mass. 576. The instructions given were proper. Sackett on Instructions, 50.

If the instructions applied only to Mr. Davis, still they were correct. It is not error to instruct the jury that they shall consider the interest of the defendant in the result of the trial. Johnson v. State, 34 Neb. 257; People v. Petmecky, 99 N. Y. 415; People v. Calvin, 60 Mich. 113; State v. Singerland, 7 Pac. 280; People v. Knapp, 11 Pac. 793; Bressler v. People, 8 N. E. 62; Munich v. People, 9 Pac. 4; State v. Sterrett, 32 N. W. 387; State v. McGinnis, 76 Mo. 326; State v. Wisdom, 84 Mo. 177.

The court did not err in admitting exhibit 10—letter from plaintiff to her husband—and in instructing the jury in regard to it. There was a conflict of testimony as to whether plaintiff wrote exhibit 10; and if she did write it, whether she first read it to her husband before sealing it for delivery to him. If such question arises on the paper itself, it is the duty of the court to determine such question. But if it is necessary to resort to extrinsic evidence, in which there was a conflict, it was proper to submit the matter to the jury under a conditional or hypothetical charge. State v. Haynes, 7 N. D. 352; 75 N. W. 267; 1 Abbott's Trial Brief (Civ.) 459; Reynolds v. Richards, 14 Penn. St. 205; Stokes v. Johnson, 57 N. Y. 673; 11 Enc. Pl. & Pr. 86; 1 Greenleaf on Ev., section 49; Holliday v. Butt, 40 Ala. 178; Jordan v. State, 52 Ala. 188.

If the admission of such letter was error, it was committed at the instance of the defendant and she cannot avail herself of it. Thompson v. McKay, 41 Cal. 221; Bigelow on Estoppel, 602; Ry. Co. v. Marcott, 41 Mich. 433; Smith v. Rathburn, 75 N. Y. 122.

The declarations of husband and wife are subject to the same rules of exclusion which govern their testimony as witnesses. Nat. Ger. Am. Bk. v. Lawrence, 79 N. W. 1016; 1 Greenleaf on Ev., section 341; 1 Phil. Ev. 80; Hall v. Hill, 2 Strange, 1094; Ross v. Winners, 6 N. J. Law, 366.

Some states hold that the privilege is absolute and cannot be waived by either spouse. Campbell v. Chace, 12 R. I. 333; O'Conner v. Marjoribanks, 44 M. & G. 435; Hopkins v. Grimshaw, 165 U. S. 342; 17 Sup. Ct. Rep. 401; Hubbell v. Grant, 39 Mich. 641.

There are some cases holding that the concurrence of both spouses is required for a waiver. Bradford v. Vinton, 26 N. W. 401; People v. Wood, 27 N. E. 362; Newstrom v. St. Paul & D. R. Co., 63 N. W. 253; Warner v. Press Pub. Co., 30 N. E. 393; Hertrick v. Hertrick, 87 N. W. 689.

An action for alienating a husband's affections can be maintained in this state under sections 2713, 2714.

Such action is maintainable at common law. Bennett v. Bennett, 116 N. Y. 583, 6 L. R. A. 555; Lych v. Knight, 9 H. L. Cas. 577; Foote v. Card, 58 Conn. 1, 6 L. R. A. 829; Nichols v. Nichols, 134 Mo. 187; Wolf v. Frank, 92 Md. 138; Haynes v. Nowlin, 129 Ind. 581, 29 N. E. 389.

It is claimed the word "abduction" used in the statute does not mean a *leading* estray, and this action cannot be maintained, and Duffies v. Duffies, 45 N. W. 522, is cited in support.

This case is criticised in Warren v. Warren, 50 N. W. 842. Against the principle are the following: Dietzman v. Mullin, 50 L. R. A. 808; Bennett v. Bennett, 116 N. Y. 583, 6 L. R. A. 555; Humphry v. Pope, 54 Pac. 847; Haynes v. Nowlin, 129 Ind. 581; Reg. v. Manktelow, 6 Cox's C. C. 143; State v. Gordon, 46 N. J. 432; State v. Seeley, 37 Hun, 190; State v. Bussey, 50 Pac. 891; State v. Keith, 50 N. W. 691; State v. Johnson, 22 S. W. 463; State v. Stone, 16 S. W. 890; State v. South, 37 S. W. 210; Rex. v. Olifier, 10 Cox's C. C. 402.

Such a case has been at least impliedly permitted in this state. Kinneberg v. Kinneberg, 8 N. D. 311, 79 N. W. 337.

Under statutes emancipating married women from the fiction of legal unity and giving them the right to sue and be sued the same as before marriage, and to enjoy their own property, they have a remedy in the courts against one who wrongfully invades this natural right. Among such states are New York, Bennett v. Bennett, supra; Kansas, Mehrhoff v. Mehrhoff, 26 Fed. 13; Pennsylvania, Gernerd v. Gernerd, 185 Pa. St. 233; New Hampshire, Seaver v. Adams, 66 N. H. 142; Missouri, Clow v. Chapman, 125 Mo. 101, etc.

It is claimed that a North Dakota court should not entertain this action, because, if the tort was committed in Minnesota where the plaintiff resides, she should not be allowed to come into this jurisdiction to sue. It is a sufficient answer that even if both parties were non-residents and the tort committed in a foreign state, still the action can be brought here, because it is a transitory action and can be brought where the defendant is found, if not against the public policy of the state where it is commenced. Herrick v. Minneapolis & St. L. Ry. Co., 16 N. W. 413; Meyers v. Chicago, St. P. M.

& O. Ry. Co., 72 N. W. 694; Northern Pac. Ry. Co. v. Babcock, 154 U. S. 190, 14 Sup. Ct. Rep 978.

Upon the question under a claim for punitive damages, the defendant may be allowed to introduce evidence of defendant's wealth, the cases cited by appellant stand alone against the majority of the state courts, and the best text writers. Where compensatory damages are sought, a defendant should have judgment rendered against him regardless of his financial condition. But when it comes to assessing damages by way of punishment or example, it is right that the jury consider the financial condition of the defendant. In the column so holding are the following states: Maryland, 61 Md. 89 Minnesota, 22 Minn. 90; New Hampshire, 49 N. H. 358; Mississippi, 74 Miss. 782; Missouri, 58 Mo. 368; Wisconsin, 61 Wis. 450, etc.; 1 Sedgewick on Damages, (8th Ed.) 385; 1 Sutherland on Damages (2nd Ed.) sections 404, 405; 1 Joyce on Damages, 144; Waldron v. Waldron, 45 Fed. 315.

It is competent to show the hostility of a witness, but he must first be examined in reference thereto; if he admits it, that is enough; the hostility is shown; if he denies it, he may be contradicted or impeached. If he admits it, he cannot. Atwood v. Welton, 7 Conn. 66; Collins v. Stephenson, 8 Gray, 438.

YOUNG, C. J. The plaintiff, Irene C. King, brought this action to recover damages from the defendant, Mary D. Hanson, for the alleged alienation of the affections of her husband, Charles M. King, and the consequent loss of his society, support and protection. The jury awarded damages in the sum of $6,000. The defendant made a motion for a new trial upon a statement of case, in which she specified 186 alleged errors as grounds for the motion. This appeal is from the order overruling the motion.

Counsel for respondent submitted a preliminary motion to dismiss the appeal upon the grounds (1) that the order denying the motion for a new trial was not signed by the trial judge, and a notice of appeal therefrom was not served upon the respondent, until after the time for appealing from the judgment had expired; and (2) that the trial judge did not settle the statement until more than 60 days after it was submitted to him for settlement. and the appeal was not perfected within 30 days after it was settled. Both of these grounds present jurisdictional questions. It appears that judgment was entered and notice of entry served on January 12, 1902, and that notice of intention to move for a new trial upon a statement to

be thereafter settled was seasonably served. On August 24, 1902, by stipulation of counsel, the statement of case prepared as a basis for the motion was submitted to the court for settlement. It was not settled until December 31, 1902. On February 3, 1903, thereafter, the motion for a new trial was overruled. This appeal was taken on March 2, 1903. It will thus be seen that the time for appealing from the judgment had expired when the order overruling the motion was made, and the notice of appeal from the order was served. In our opinion, the appeal was taken in time, and the motion to dismiss must therefore be denied. The first ground of the motion is based upon the assumption that the time for appealing from an order granting or refusing a new trial expires when the time for appealing from a judgment has expired. This is erroneous. The remedy afforded by an appeal from a judgment and the remedy by appeal from an order granting or refusing a new trial are wholly independent remedies. A party aggrieved may invoke one or the other, or both, at his election, provided only he does so within the time and in the manner provided by statute. The periods of time in which these independent rights may be exercised are fixed by the statute, and are in no respect dependent one upon the other. Section 5605, Rev. Codes 1899, which prescribes the time for appealing from judgments and orders, reads as follows: "An appeal from a judgment may be taken within one year after the entry thereof by default, or after written notice of the entry thereof in case the party against whom it is entered has appeared in the action, and from an order within sixty days after written notice of the same shall have been given to the party appealing; provided, that in all actions heretofore or hereafter tried, when the appeal from an order is based upon errors assigned or set out in a statement of the case submitted to the court or judge thereof for settlement within sixty days after the service of such written notice and at least eight days prior to the expiration of such time and such court or judge neglects to settle such statement within the said sixty days, the party appealing shall have thirty days after such statement shall have been settled in which to take an appeal." Under the above section an appellant has one year in which to appeal from a judgment, and he also has an absolute period of 60 days after written notice in which to appeal from an order. As to some orders the proviso in the above section adds a further period of time; that is, when the order from which it is proposed to appeal requires the settlement

of a statement of case as a prerequisite to a review in this court. The period of time for appealing from orders which do not require the subsequent settlement of a statement to secure a review is limited to 60 days. It is only when a statement is necessary to present the errors relied upon for a review of the order that the additional time is given. In such cases it is given if a statement of case is submitted at least 8 days prior to the expiration of the 60-day period. In case the court or judge neglects to settle such statement within the 60 days, the 60-day limitation does not apply, but the party appealing is given 30 days after the statement is settled in which to appeal. But that is not this case. Here the order appealed from was made after the statement was settled and was based upon such statement. The statement was not submitted after the order was served as a basis for securing a review, but was submitted and settled before the order was made and constituted the basis for the order overruling the motion for new trial. The facts stated in the second ground of the motion, namely, "that the trial judge did not settle the statement until more than sixty days after it was submitted to him for settlement, and the appeal was not perfected within thirty days after it was settled," do not affect the time for appealing in this case, for the reason that the order appealed from was made before, and not after, the statement was settled, and the time limit contained in the proviso has no application whatever to this order. It frequently happens that orders are made which cannot be reviewed upon an appeal, except upon a statement of case subsequently settled—for instance, orders overruling or granting motions for new trial based wholly upon the court's minutes. Settlement of statements in these and similar cases frequently becomes necessary for the review of such orders. See Bank v. Gilmore, 3 N. D. 188, 54 N. W. 1032; Oliver v. Wilson, 8 N. D. 590, 80 N. W. 757, 73 Am. St. Rep. 784; Bailey v. Scott, 1 S. D. 337, 47 N W. 286.

We now turn to the merits. The complaint alleges that the plaintiff and her husband, Charles M. King, were married in the state of Minnesota in January, 1890, and that they thereafter resided as husband and wife in that state until January, 1900; that plaintiff has three children, the issue of said marriage, all of whom are in her care and custody, the eldest being about the age of eight years, and the youngest of the age of about four months; that in October, 1899, at Cando, in this state, the defendant and plaintiff's husband first became acquainted, and that from that time, and continuously until

about the 1st of February, 1900, at Cando aforesaid, and at the city of Minneapolis, Minn., and elsewhere, the defendant, knowing that the said Charles M. King was plaintiff's husband, wrongfully, wickedly and maliciously contriving and intending to injure plaintiff, and to deprive her of the comfort, society, support, aid and affection of her said husband, maliciously enticed the plaintiff's said husband away from plaintiff, and from the home of plaintiff and her said children at Minneapolis aforesaid, and wrongfully, wickedly and maliciously induced, caused and persuaded plaintiff's said husband to abandon her and her said home and family, and to commit adultery with her (the defendant), and to live in adultery with her (the defendant), and that in consequence thereof, and by means of the arts, wiles and inducements of the said defendant, and caused solely thereby, the said Charles M. King, plaintiff's husband, did on or about the 1st day of February, 1900, at said city of Minneapolis, desert, cease to support, and abandon this plaintiff and their said home and their children, which desertion and failure to support plaintiff and said children has ever since continued, and that plaintiff's said husband, in company with said defendant, on or about said date last named, departed from the state of Minnesota, and went to the state of Wisconsin, where the said defendant and plaintiff's husband have ever since resided, and under the same roof now reside, at the city or village of Rice Lake, in said state, and that defendant and the plaintiff's said husband, as plaintiff is informed and verily believes, are now there living together in adultery; that plaintiff's husband has wholly abandoned plaintiff and her children, and refused again to live with plaintiff or to support her and their children, by reason of the arts, wiles and inducements of said defendant, whereby the affection of her said husband has been wholly alienated and destroyed, and the plaintiff has ever since been, and now is, deprived of the comfort, society, assistance, support, love and affection which she otherwise would have had, and, by reason of the wrongful acts of the defendant, has suffered great distress of body and mind, and her domestic peace and happiness have been forever destroyed. The complaint further alleges that the defendant is a widow, 27 years of age, of considerable wealth, and reputed to be the owner of a large amount of real estate in the state of North Dakota, and is worth at least the sum of $30,000, and demands judgment for the sum of $10,000. The allegations of the answer, so far as important upon this appeal, consist of a general denial, and an

averment "that the acts alleged in plaintiff's complaint, in so far as the same are claimed to have taken place in the state of Minnesota, and in so far as said acts are alleged as done to alienate, or in fact did alienate, the affections of plaintiff's husband, do not state a cause of action enforceable under the laws of the state of North Dakota."

The complaint alleges, and the answer admits, that in the state of Minnesota a married woman has the right to maintain an action against another woman for the alienation of the affections of her husband, when occasioned or induced by the acts or conduct of the other woman.

No attack is made upon the sufficiency of the evidence to sustain the verdict. Only a portion of the errors specified in the statement are assigned for error in appellant's brief. Those which are assigned and argued relate to alleged errors in giving and refusing instructions, admitting and rejecting evidence, and refusing to direct a verdict for defendant.

The most important question presented is whether in this state this action is maintainable. It is contended by appellant that the alienation of the affections of a husband from his wife, and his consequent abandonment of her, when occurring in this state, do not constitute a legal wrong for which she can recover damages; and assuming this to be the policy of the law in this state, it is contended that the courts of this state should decline to entertain actions to recover damages when the consummated act of abandonment occurred in a state where it constitutes a legal wrong and is remediable. We do not assent to the contention that the wrong done to the abandoned wife is merely a moral wrong, and is not a legal wrong. At common law a husband was entitled to the society of his wife and could maintain an action for the alienation of her affections. Just what the corresponding right of the wife was, has been a matter of much debate. But judicial opinion is to the effect that the right of the wife to the society, affection and support of her husband is a natural right. The remedy for the alienation of the affections of her husband was denied to her, not because she suffered no wrong, but because (1) at common law she had by her marriage lost her legal identity, and could not sue independent of her husband; and (2) damages recovered for wrongs done her belonged, not to her, but to her husband. The injury to the husband, caused by the alienation of the affections of his wife, was remediable. The injury to

the wife, caused by the alienation of the affections of her husband, was not remediable. As to her it was, in short, a wrong without a remedy. The statutes of this state, in common with those of the other states, have removed this disability. It is a maxim of the jurisprudence of this state that "no one should suffer by the act of another" (section 5082, Rev. Codes, 1899), and that "for every wrong there is a remedy." Section 5085, Id. "* * * The wife after marriage has with respect to property, contracts and torts the same capacity and rights and is subject to the same liabilities as before marriage, and in all actions by or against her she shall sue and be sued in her own name." Section 2767, Id. See, also, section 2766, Id. The effect of these statutes is to authorize the wife to maintain actions with reference to property, contracts, and torts in her own name, and damages recovered by her for wrongs done to her belong to her, and not to her husband, as formerly. It is almost universally held, in states wherein similar statutes have been enacted, that the wronged wife may maintain an action for the alienation of the affections of her husband, and the reason assigned is that the statute has removed the disabilities which caused a denial of the remedy at common law. These decisions meet our full approval. Bennett v. Bennett, 116 N. Y. 584, 23 N. E. 16, 6 L. R. A. 553; Mehrhoff v. Mehrhoff (C. C.), 26 Fed. 13; Gernerd v. Gernerd, 185 Pa. 233, 39 Atl. 884, 40 L. R. A. 549, 64 Am. St. Rep. 646; Clow v. Chapman, 125 Mo. 101, 28 S. W. 328, 26 L. R. A. 412, 46 Am. St. Rep. 468; Nichols v. Nichols, 134 Mo. 187, 35 S. W. 577; Seaver v. Adams, 66 N. H. 142, 19 Atl. 776, 49 Am. St. Rep. 597; Wolf v. Frank, 92 Md. 138, 48 Atl. 132, 52 L. R. A. 102; Dietzman v. Mullin (Ky.) 57 S. W. 247, 50 L. R. A. 808, 94 Am. St. Rep. 390; Betser v. Betser, 186 Ill. 537, 58 N. E. 249, 52 L. R. A. 630, 78 Am. St. Rep. 303; Waldron v. Waldron (C. C.) 45 Fed. 315; Lockwood v. Lockwood, 67 Minn. 476, 70 N. W. 784; Haynes v. Nowlin, 129 Ind. 581, 29 N. E. 389, 14 L. R. A. 787, 28 Am. St. Rep. 213; Holmes v. Holmes, 133 Ind. 386, 32 N. E. 932; Price v. Price, 91 Iowa, 693, 60 N. W. 202, 29 L. R. A. 150, 51 Am. St. Rep. 360; Beach v. Brown (Wash.) 55 Pac. 46, 43 L. R. A. 114, 72 Am. St. Rep. 98; Hodgkinson v. Hodgkinson, 43 Neb. 269, 61 N. W. 577, 27 L. R. A. 120, 47 Am. St. Rep. 759; Humphrey v Pope, 122 Cal. 253, 54 Pac. 847; Warren v. Warren, 89 Mich. 123, 50 N. W. 842, 14 L. R. A. 545; Williams v. Williams, 20 Colo. 151, 37 Pac. 614; Tucker v. Tucker, 74 Miss. 93, 19 South. 955, 32 L. R.

A. 623; West Lake v. West Lake, 34 Ohio St. 621, 32 Am. Rep. 359; Foot v. Card, 58 Conn. 1, 18 Atl. 1027, 6 L. R. A. 829, 18 Am. St. Rep. 258. The exceptions are the states of Maine and Wisconsin. Doe v. Roe, 82 Me. 503, 20 Atl. 83, 8 L. R. A. 833, 17 Am. St. Rep. 499; Duffies v. Duffies, 76 Wis. 374, 45 N. W. 522, 8 L. R. A. 420, 20 Am. St. Rep. 79. The Maine court was of the opinion that the right of the wronged wife to sue for a divorce and a division of property, and to prosecute the guilty parties criminally, were adequate remedies, and that to accord to her the same remedies given to a wronged husband would be unwise, as a matter of policy. The decision in the Wisconsin case was by a divided court; the majority being of the opinion that at common law the wife had no legal right to the consortium of her husband, and that it would require affirmative legislative action (and this was also the opinion of the Maine court) to give her the right, and consequently that the mere removal of common-law disabilities was not sufficient. This position has been unsparingly criticised by all courts wherein the case has been referred to, and the doctrine as laid down in that case is only adhered to in that state at this time under the rule of stare decisis, and then only by a divided court. See Lonstorff v. Lonstorff (Wis.) 95 N. W. 961. But our statute goes further than the mere removal of the common-law disabilities of married women, and speaks affirmatively. Section 2718, Rev. Codes 1899, provides that "the rights of personal relation forbid (1) the abduction of a husband from his wife; * * * (2) the abduction or enticement of a wife from her husband. * * *" This section is identical in language with section 49 of the civil code of California. It will be noted that this section forbids the abduction of a husband from the wife, as well as the abduction of a wife from her husband. The "abduction" referred to in this section is the taking away by either violence, fraud or persuasion; the word "abduction" being used therein according to its long-settled meaning. See 3 Black. Comm. 139; 2 Addison on Torts (4th Ed.) 1099; Cooley on Torts (2d Ed.) 225; State v. Chisenhall, 106 N. C. 679, 11 S. E. 518; People v. Seeley, 37 Hun. 192; 1 Am. & Eng. Enc. Law, 163. This construction was adhered to in Humphrey v. Pope, 122 Cal. 253, 54 Pac. 847, which was an action by a wife to recover damages against another woman for the alienation of her husband's affections. It was contended in that case, as it has been in this, that the word "abduction" should be held to mean a forcible taking, and something

different from a taking by enticement or persuasion; the argument being based upon the ground that the word "enticement," found in subdivision 2, is omitted from subdivision 1. This was denied. The court said: "The word 'abduct' is from the Latin ab-duco, to lead away. Abduction is the taking away a wife, child or ward by fraud and persuasion or open violence. Carpenter v. People, 8 Barb. 606; State v. George, 93 N. C. 570. In private or civil law it is the act of taking away a man's wife by violence or persuasion. 3 Stephen's Commentaries, 536. In reason, the wife should be as much entitled to sue for violation of her personal right, where her husband has been taken away from her by enticement, if such right exist at all, as should the husband when his wife has been enticed from him. Ordinarily the injury is greater to the wife than to the husband. We are unwilling to give a construction to this section which would limit the wife to an action when her husband has been forcibly taken from her. Our criminal statute as to the crime of abduction for purposes of prostitution uses the words 'takes away' for the word 'abduct,' and it has been held 'that a physical carrying away is not required to constitute the taking, but that inducements are sufficient.' People v. Demousset, 71 Cal. 611, 12 Pac. 788. In the decision of courts generally, the word 'abduction' and the words 'taking away' are used as the equivalent of each other, as we think they in fact are. We are unwilling to impute to the legislature any intention to give to the husband a right of action for the abduction of his wife, under clause 2 of section 49 of the civil code, of which the wife is deprived by the phraseology of clause 1. The abduction meant in both clauses, we think, should be held to be the same." The construction of the California court meets our approval. It is true that the word "abduction," according to the meaning given—and that is its usual meaning—includes a taking by enticement, and therefore the use of the word "enticement" in subdivision 2 was unnecessary. It is more proper, however, to treat it as a redundancy of expression, than to restrict the common meaning of the word "abduction," and thus defeat the legislative intent, which was to place a wronged wife upon the same footing as her husband. This view is strengthened to some extent by the note subjoined to subdivision 1 by the Field code commission, which originated it. We are of opinion that the wrong complained of is a legal wrong, and that an action by the wronged wife is maintainable under the statutes of this state.

The refusal of the trial court to give the following instruction is assigned as error: "Under the laws of the state of Wisconsin the plaintiff would not be permitted to maintain this action against the defendant. Therefore, if you find that the acts were done by the defendant, of which she complains, but that they were done within the state of Wisconsin, your verdict must be for the defendant." The refusal of this request was not error. It is agreed that "the actionable wrong is the abandonment of the wife by the husband, from the improper influences of the defendant, and that mere ineffectual attempt to alienate do not constitute actionable wrong, and that therefore the crucial question in this case is, where did plaintiff's husband abandon her because of the unlawful acts of the defendant?" The contention of appellant's counsel is that the abandonment of plaintiff by her husband might have taken place in the state of Wisconsin, and that "the court committed reversible error in not leaving the question to the jury, as a question of fact, whether the abandonment took place in that state or in some other state." This question was fully covered by the charge given. The right to recover was expressly limited to an alienation and abandonment consummated either in the state of North Dakota or Minnesota by the following instruction: "The great question for you to decide is, did Mrs. Hanson, knowing that Mr. King was a married man, wrongfully alienate or entice away the affections of Mr. King from his wife, and did she wrongfully and knowingly deprive Mrs. King of the comfort, society, support, love and affection of her husband, and was this done by Mrs. Hanson either in the state of North Dakota or Minnesota?" The substance of the language just quoted was reiterated in at least nine places in the charge. But, had this portion of the charge been wholly omitted, it would not have been error, for the reason that the tort in this case, under the undisputed testimony, was consummated in the state of Minnesota. The King family resided in Minnesota, and there is no pretense that Mr. King ever established, or attempted to establish, a home in Wisconsin or elsewhere. It stands uncontradicted that the plaintiff was abandoned in Minnesota.

Appellant also complains of the court's instruction with reference to a certain letter which purports to have been written by the plaintiff to her husband. The letter in question was offered by the defendant as an admission by plaintiff that prior to the time the defendant made the acquaintance of her husband the latter had lost

his affection for his wife, had supported her but indifferently, and had had improper relations with other women. The letter was admitted over plaintiff's objection that it was a confidential communication between husband and wife and was privileged. It appears that in June, following plaintiff's abandonment by her husband, the plaintiff went to Rice Lake, Wis., and called at the hotel which was operated by defendant and King, for the purpose of inducing her husband to leave the defendant, and return and live with her in Minneapolis. Her mission was fruitless, however, for, upon receiving information of her coming, he left for an adjoining town, and defendant gave her the indefinite information that he had gone South. The plaintiff testified that before returning to Minneapolis she wrote a note to her husband, sealed it, and gave it to a boy at the hotel, to be delivered to her husband upon his return. Defendant states that the plaintiff wrote a letter to her husband, read it to her before sealing it, and left it with her for delivery; that she delivered the same to King upon his return; and that she had not seen it since, until offered at the trial. Plaintiff testified that this is not the letter which she left at the hotel, that she did not write this letter, and that she did not read to the plaintiff the note which she left at the hotel. The instruction complained of is as follows: "I have admitted a letter claimed to have been written by Mrs. King to her husband at the hotel at Rice Lake, Wisconsin. You will first consider whether the letter (Exhibt 10) referred to is the identical letter written by Mrs. King to her husband, and, if you decide that it is the letter so written by Mrs. King to her husband, you will then consider the question as to whether Mrs. King read such letter to Mrs. Hanson or not. If you decide that it is the letter written by Mrs. King to her husband, and that it was read by Mrs. King to Mrs. Hanson, then you will consider the contents of said letter for the purpose of throwing light into your minds as to the relations existing between Mrs. King and her husband, and as to whether the acts of Mrs. Hanson caused an alienation of the affections of Mr. King from his wife, and caused him to desert and fail to support his wife. If, however, the jury should decide, upon an examination of the evidence, that the letter is not the letter written by Mrs. King to her husband at Rice Lake, or should decide that the letter was not read by Mrs. King to Mrs. Hanson at Rice Lake, then the jury should not consider the letter for any purpose. If this letter was not read by Mrs. King to Mrs. Hanson in the hotel

at Rice Lake, and if the jury should so find from the evidence, then the letter was a privileged communication made by the wife to the husband, and it should not be considered in evidence in that case." Is the foregoing instruction erroneous? We are of opinion that it is not. There can be no doubt that this letter, if the plaintiff wrote it, was a confidential communication from the plaintiff to her husband, and, as such, was privileged, and for that reason improper to be considered by the jury, unless the privilege was waived. So, too, it could have no evidentiary effect if the plaintiff did not write it. The trial court was of opinion that if it was read to the defendant, as she claims, it lost its privileged character. Whether this alone would amount to a waiver, we do not decide, for, if it would not, then the admission of the letter was error against the plaintiff, and wholly favorable to the defendant. There being some evidence that plaintiff wrote the letter, and that she read it to the defendant, the court admitted it in evidence, and submitted the controverted question of the writing and reading to the jury for determination, and instructed them to disregard it if it was not written by plaintiff, and also to disregard it if it was written by her, but was not read to the defendant, but otherwise to give it such weight as it was entitled to. This instruction was, in our opinion, entirely proper. It requires no citation of authority to show that the preliminary question of the admissibility of evidence is for the court, and that this often requires the determination of disputed fact affecting that question. But we do not understand that the court is obliged in every instance to determine the disputed questions of fact. The rule which meets our approval—and it is one entirely consistent with the separate functions of judge and jury, and is adapted to sound practice—is that, when the question of admissibility rests upon disputed facts, the court may submit the evidence to the jury, with proper hypothetical instructions. This rule is stated in 1 Greenleaf on Ev. (16th Ed.) section 81e, as follows: "In trials by jury, it is the province of the presiding judge to determine all questions on the admissibility of evidence to the jury, as well as to instruct them in the rules of law by which it is to be weighed. * * * If the decision of the question of admissibility depends on the decision of other questions of fact, such as the fact of interest, for example, or the execution of a deed, these preliminary questions of fact are in the first instance to be tried by the judge, though he may, at his discretion, take the opinion of the jury upon them. But where the

question is mixed, consisting of law and fact so intimately blended as not to be easily susceptible of separate decision, it is submitted to the jury, who are first instructed by the judge on the principles and rules of law by which they will be governed in finding a verdict; and these instructions they are bound to follow." This rule was applied in Hartford Fire Ins. Co. v. Reynolds, 36 Mich. 502, to the testimony of an attorney which it was claimed was privileged. The court said: "We do not think it improper to leave to the jury the question of the existence of such a relation, when disputed. The judge may determine, upon the statements of a witness himself, whether he is competent or not, but it does not properly belong to a judge to decide upon the truth of matters which have come out during the examination of witnesses who conflict. And it has been held that on an intricate question of fact the jury very properly be consulted. 1 Edw. Ph. Ev. 4. We understand this to be correct practice, and in many cases to be the only safe rule for determining such questions. It is laid down very plainly by Greenleaf. 1 Gr. Ev. sections 49, 425." Some courts approve the practice, where it is allowable, of taking a special verdict upon the disputed questions of fact. This, however, seems optional with the court. In State v. Patterson, 68 Me. 473, it was said that "the court may first inform the jury as to the law, or the jury may first inform the court as to the facts, as may be most practicable." See cases cited in opinion; also Bartlett v. Hoyt, 33 N. H. 151; Festerman v. Parker, 32 N. C. 474; Silverthorn v. Fowle, 49 N. C. 362; Ross v. Gould, 5 Greenl. 204; Reynolds v. Richards, 14 Pa. 205; McNichol v. Pacific Express Co., 12 Mo. App. 407; Stokes v. Johnson, 57 N. Y. 673; Coquillard v. Hovey, 23 Neb. 627, 37 N. W. 479, 8 Am. St. Rep. 134; Edwards v. Goldsmith, 16 Pa. 43; Boyce v. Martin, 46 Mich. 239, 9 N. W. 265; 1 Abbott's Trial Brief, Civ. 459; Curtis v. Martz, 14 Mich. 512; Cunningham v. Washburn, 119 Mass. 227; State v. Haynes, 7 N. D. 356, 75 N. W. 267; 11 Enc. Pl. & Pr 87, and cases cited in note 1; 1 Jones on Ev., section 172. The most practicable method, in our opinion, was that adopted by the trial court in this case and the same meets our full approval.

Appellant further complains of the instructions of the court, in this: that "the court erred in singling out the testimony of Mr. Davis, one of defendant's attorneys, by language practically throwing discredit thereon." The record furnishes no foundation for this criticism. H. G. Middaugh, one of plaintiff's attorneys, testi-

fied on behalf of his client. Mr. Davis testified on behalf of the defendant. The court did not name either of these witnesses in its instructions. Neither was their testimony stated or commented upon. The court instructed the jury that "an attorney is a competent witness for his client on the trial of a case, and the testimony of such a witness shall not be disregarded by you simply because the witness is an attorney testifying in favor of his own client. In such a case you are the judges of the weight and credit to which such testimony is entitled." The additional instructions on this subject did not establish any different standard for weighing the testimony of an attorney than is applicable to other witnesses.

It is urged that "the court erred in excluding. on its own motion, from the court room, while Mrs. King was testifying, the witness Grace Dickinson, the sister of defendant." The order complained of was made during the examination of Mrs. King, the first witness in the case, and required "all witnesses except the plaintiff and the defendant in this case to retire from the court room:" the court stating, in response to objection of defendant's counsel, that "the order applied on both sides of this case with equal impartiality." This was a matter lying within the discretion of the trial judge. It is said that the great object of examining witnesses is to elicit the truth, and the rule is that, "if the judge deems it essential to the discovery of truth that the witnesses should be examined out of the hearing of each other, he will so order it. (The process is termed, in many American courts, 'putting under the rule,' but a better term seems 'sequestration.') * * * The ordinary witness may always be subjected to this safeguard. It is not necessary that all should be excluded. The court has discretion to exclude some, and to allow others to remain." See 1 Greenleaf on Ev. (16th Ed.) sections 431, 432, and cases cited. In this case the order of exclusion was general, and there was no abuse of discretion.

Evidence was offered, over defendant's objection, tending to show that when King abandoned his wife in Minneapolis, and accompanied the defendant to Rice Lake, Wis., he lived with her there in adultery. It is contended that this evidence had no tendency to throw light upon their prior relations in Minnesota and North Dakota, and was of a highly prejudicial character. It cannot be doubted that this evidence was damaging to the defendant. It was, in our opinion, however, entirely competent. The circumstance that defendant took King with her to Wisconsin, and kept him at her

hotel after the plaintiff had protested to her in Minneapolis against it, and against the defendant's relation with her husband, and the evidence of their adulterous relations in Wisconsin, were valuable aids in determining what their relations had been in this state and in Minnesota, and tended strongly to show that the defendant was the moving cause in King's abandonment of his wife. The following language of the court in Romaine v. Decker, 43 N. Y. Supp. 79, 11 App. Div. 20, is appropriate to this case: "Carnal intercourse may be—nay, generally is—the greatest of enticements and allurements. * * * We have a notion that a woman's voluntary gift of her person to a man may be regarded certainly as great an evidence of illicit affection or love as anything she might say. In the case of a common strumpet, plying her vocation, and dealing with a husband on strictly a pecuniary basis, it may be that she cannot be properly charged with inducing or alluring the man away. So, too, in the present case, if carnal relations were established between the plaintiff's husband and the defendant, it would be competent for the defendant to show that she was the party least at fault, and that it was she who had yielded through the blandishments and seductive arts of the man, not he through her solicitation. But we think that when it has been shown that the husband abandons his wife, and remains away from her, and it is also proved that during the period of such abandonment he is maintaining improper relations with another woman, it will ordinarily be a question of fact for the jury to determine whether the meretricious favors accorded by the mistress are not an inducing cause to the desertion of the wife."

Neither did the court err in admitting evidence of defendant's wealth. Under the pleadings and evidence, the case presented a question to the jury, not only of compensatory, but of punitive, damages. The rule, resting upon the great weight of judicial opinion and upon sound reason, is that, in actions wherein exemplary damages are allowable, it is proper to admit evidence of the defendant's wealth. The rule and the reasons on which it is based are stated in 1 Joyce on Damages, section 144, as follows: "In those cases where exemplary damages may be recovered, it is proper to receive evidence as to the financial condition of the defendant. The plaintiff may introduce evidence showing the wealth of the defendant, so as to enable the jury to determine what damages shall be assessed against him as a punishment, for what might be a severe and exces-

sive punishment to a person of little or no wealth might, on the other hand, be very inadequate when awarded against one whose financial standing is high. As such evidence is admissible in behalf of the plaintiff, so, likewise, the defendant may show that he is poor, or a man of little wealth, so that an excessive amount may not be awarded." See cases cited in note; also 1 Sedgwick on Damages, section 405, and cases cited.

As to the further contention that "it was error for the court, in the midst of the trial, to punish defendant's leading and practically sole counsel in the case for contempt, and deprive her of his assistance for a time during the trial," it is sufficient to say that this question is not before us for review. True, the appellant specified in her notice of intention to move for a new trial that one of the grounds of her motion would be "irregularity in the proceedings of the court and adverse party, and for abuse of discretion by the court, by which the defendant was prevented from having a fair trial." But she did not follow it up. The grounds thus specified constitute part of the causes enumerated in subdivision 1 of section 5472, Rev. Codes 1899, as grounds for new trial. Section 5473, Rev. Codes 1899, requires that an application for a new trial, for causes stated in subdivision 1 of section 5472, "must be upon affidavit." No affidavits were served or filed, and this ground must therefore be deemed to have been abandoned. It is proper to say, however, that the jury were not present when the contempt proceedings occurred, and we are unable to see from the record how the defendant's case was prejudiced by the brief absence of one of her counsel. Upon the merits of the order, it is not proper to express an opinion. If it was erroneous, the party aggrieved thereby has his remedy by an independent appeal.

The questions already considered dispose of the assignments chiefly relied upon. Those not considered have been examined and found to be without merit.

The order appealed from will be affirmed. All concur.

Justices MORGAN and COCHRANE did not sit in the above case, or take any part in the decision; Judge C. J. FISK, of the First Judicial District, and Judge S. L. GLASPELL, of the Fifth Judicial District, sitting in their place by request.