WOOD, *County Treasurer, et al.* v. GLEASON *et al.*

No. 5029.   Opinion Filed June 30, 1913.

Rehearing Denied April 28, 1914.

Released for Publication May 28, 1914.

(140 Pac. 418.)

1.  **INDIANS—Allotments—Ministerial Acts.**   After all the require-
ments of the acts of Congress and the so-called agreements
providing for the distribution of Indian lands have been com-
plied with, the title of the allottee becomes fixed and absolute,
and the execution and delivery of the patent after the right
has become complete are the mere ministerial acts of the offi-
cers charged with that duty.

2.  **CONSTITUTIONAL LAW—Exemption—Indian Allotments.**   ''A
tax exemption, and not merely an additional guard against
alienation, which would fall when the restrictions on aliena-
tion were removed, was made by the Act of June 28, 1898
(30 St. at L. 505, c. 517), under which the lands allotted in
severalty under that act to the members of the Choctaw and
Chickasaw tribes were subjected to various restrictions on
alienation, and were to be nontaxable while the title remained
in the original allottees.   Choctaw and Chickasaw allottees un-
der the Atoka Agreement embodied in the Act of June 28,
1898, under which, in part consideration of their relinquishment
of all claim to the tribal property, they were to receive allot-
ments of the lands in severalty, which were to be nontaxable
for a specified period while the title remained in the original
allottees, acquired vested rights of exemption from state taxa-
tion, protected by U. S. Const. Amend. 5, from abrogation dur-
ing that period, as was attempted by the Act of May 27, 1908
(35 St. at L. 312, c. 199); and said exemption applies, whether
the patents to such lands were delivered to the allottees and
accepted by them prior or subsequent to the passage of the
latter act.''

3.  **INDIAN ALLOTMENTS.**   Affirmed upon the authority of **Choate
v. Trapp,** 224 U. S. 664, 32 Sup. Ct. 565, 56 L. Ed. 941, and
**Gleason v. Wood,** 224 U. S. 679, 32 Sup. Ct. 571, 56 L. Ed. 947.

(Syllabus by the Court.)

*Error from Superior Court, Pittsburg County;*
*W. C. Liedtke, Judge.*

Action by Michael H. Gleason and others against J. I.
Woods, County Treasurer of Pittsburg County, and others.
Judgment for plaintiffs, and defendants appeal.   Affirmed.

*Chas. West*, Atty. Gen., for plaintiffs in error.

*D. C. McCurtain* and *E. P. Hill*, for defendants in error.

KANE, J.   Upon the foregoing cause being remanded to the superior court of Pittsburg county, pursuant to the mandate of the Supreme Court of the United States (*Gleason v. Wood*, 224 U. S. 679, 32 Sup. Ct. 571, 56 L. Ed. 947), the court below overruled the demurrer to the petition, whereupon the defendants filed their answer, which, in part, is as follows:

"That by the act of Congress of April 26, 1906, the Congress of the United States enacted (34 St. at L. 144) 'that all lands upon which restrictions are removed shall be subject to taxation.' That on May 27, 1908 (35 St. at L. 312, c. 199), the Congress enacted: "That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees, enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood, including minors, shall be free from all restrictions.   All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions.'   And defendants allege that by the provisions of said acts aforesaid all the lands which, on March 1, 1909, were alienable, and the patents to which had not been delivered to and accepted by the allottee prior to April 26, 1906, were subject to taxation for the support of the state, county, and subdivisions of the state for the fiscal year ended June 30, 1910."

The superior court sustained a general demurrer to the answer, and, the defendants standing thereon, and not desiring to plead further, judgment was rendered for the plaintiffs, as prayed for in their petition; to reverse which action this proceeding in error was commenced.

The main contention of the Attorney General in behalf of the plaintiffs in error is that the Supreme Court of the United States did not pass upon the question whether the lands involved are taxable where the patents thereto were delivered to the allottees and were accepted by them subsequent to the

passage of the act which attempted· to subject such lands to taxation; that the court erroneously assumed that the patents had all been delivered and accepted prior to the passage of said act, whereas, most of the patents were delivered and accepted after the passage of the act of April 26, 1906, which, as well as the act of May 27, 1908, provides that lands on which restrictions were removed are taxable. We cannot agree with the contention of counsel. In our judgment, the opinion of the Supreme Court of the United States covers all the points raised by the Attorney General in the instant proceeding in error.

Whilst it is true that the record did not contain a copy of any of the patents issued to the plaintiffs, the court was advised of their contents, for the terms of the grant were fixed by prior acts of Congress or agreements with the Indians, of which the courts take judicial notice, one of which, the Atoka Agreement, contained a provision which required the patent, when issued, to be framed in conformity with the terms of the Atoka Agreement, which also contained the exemption now under consideration. The court, therefore, was justified in presuming that the patents conformed to the acts and agreements in pursuance of·which they were issued, and therefore the statement that "the patents and the legislation of Congress must be construed together, and, when so construed, they show that Congress, in consideration of the Indian's relinquishment of all claim to the common property, and for other satisfactory reasons, made a grant of land which should be nontaxable for a limited period," was based upon as full information as if copies of the patents had been incorporated in the record. As the Supreme Court further said:

"The patent issued in pursuance of those statutes gave the Indian as good a title to the exemption as it did to the land itself. Under the provisions of the fifth amendment there was no more power to deprive him of the exemption than of any other right in the property. No statute would have been valid which reduced his fee to a life estate, or attempted to take from him ten acres, or 50 acres, or the timber growing on the land."

Moreover, the mere ministerial act of delivering the patents cannot be said to affect or change any legal right acquired by the Indians by virtue of the acts of Congress or their agreements with the government, for it is well settled that, when a patent is issued to the lands thus acquired, it relates back to the inception of the right of the patentee. After all the requirements of the acts of Congress and the so-called agreements providing for the distribution of Indian lands have been complied with, the title of the allottee becomes fixed and absolute, and the execution and delivery of the patent after the right has become complete are the mere ministerial acts of the officers charged with that duty. *Ballinger v. Frost*, 216 U. S. 241, 30 Sup. Ct. 338, 54 L. Ed. 464.

The patent is not creative of the right of the allottees, either to the land or to the exemption. If the patent is valid, it is so merely because it is in confirmation of previous existing rights, and not because it created any new rights. In *Godfrey v. Iowa Land & Trust Co.*, 21 Okla., 293, 95 Pac. 792, Mr. Justice Williams, speaking of the effect of the nonissuance of the patent to a Seminole allotment, says:

"We accordingly conclude that the herein allottee, Robert James, a member of the Seminole Tribe, but not of Indian blood, after selecting his allotment, and designating his homestead, and receiving his certificate of such allotment from the chairman of the Commission of the Five Civilized Tribes, as provided for in the agreement of December 16, 1897, became the equitable owner of the same, vested with an indefeasible title therein, and that the duty or obligation to issue a patent therefor was imperative, and not discretionary, with the tribe or government, and could make a binding sale, deed, or conveyance on that part of his allotment not selected as a homestead, after the removal of the restrictions on alienation by the Indian appropriation act, approved April 21, 1904, although no patent had been issued or delivered to said allottee before he undertook to alienate the same."

On the whole, we are satisfied that the Attorney General presents no question in the present proceeding which has not

already been decided against him in the cases of *Choate v. Trapp,* 224 U. S. 664, 32 Sup. Ct. 565, 56 L. Ed. 941, *Gleason v. Wood, supra,* and other cases of that class.

The judgment of the court below must therefore be affirmed.

All the Justices concur.