## JOHNSON v. JOHNSON.

No. 9588—Opinion Filed March 11, 1919.

(179 Pac. 595.)

(Syllabus.)

1. **Indians — Allotment — Restriction on Alienation — Disposition in Divorce Suit.**

Where an Indian of the Wyandotte tribe of Indians had been allotted 40 acres of land and a trust patent for the same had been issued under act of Congress approved February 8, 1887, § 5 (U. S. Comp. St. § 4201), which contained a restriction against alienation of the land for a period of 25 years, held that, in a suit brought against him by his wife for a divorce and for the care and custody of their minor children, and for permanent alimony, and for the settlement of their property rights, and that upon the trial the undisputed evidence showed that the period of restriction had expired, but the allottee had not received his final patent for the land from the government, that he held the equitable title thereto in fee, and that the decree of the trial court awarding the land to the wife as permanent alimony, and in settlement of the property rights of the parties, and for her use in supporting herself and minor children, was valid, and authorized under section 4969, Rev. Laws 1910.

2. **Divorce — Conflicting Evidence—Appeal.**

In a contested divorce case, where the evidence is conflicting, and there is sufficient competent evidence to support the findings of the court and the decree based thereon, the same will not be disturbed on appeal.

3. **Appeal and Error—Rulings on Evidence —Reversal.**

A case will not be reversed for error in the admission or rejection of evidence unless it appears upon an examination of the entire record that such error has resulted in a miscarriage of justice, or constitutes a substantial violation of a constitutional or statutory right.

Error from District Court, Oklahoma County; Edward Dewes Oldfield, Judge.

Action for divorce by Wilber Johnson against Dollie Johnson, with cross-petition by defendant. Decree of divorce granted to defendant, with the custody of minor children and permanent alimony, etc., and from the overruling of his motion for a new trial plaintiff brings error. Affirmed.

Carlisle & Edwards, for plaintiff in error.

L. A. Maris, for defendant in error.

JOHNSON, J. The plaintiff in error, hereinafter styled plaintiff, brought action against the defendant for divorce on the ground of abandonment.

To this defendant in error, hereinafter styled defendant, filed answer and cross-petition, and on trial of the case the defendant was granted a decree of divorce and the care and custody of their four minor children, and was awarded as permanent alimony the 40-acre tract of land in Ottawa county described in her answer and cross-petition, the title to which was in the plaintiff. From the judgment of the court overruling the motion for new trial the plaintiff appeals and assigns error.

The evidence discloses that the parties

were Indians, the plaintiff being a Wyandotte and the defendant a Chinook.

It is clearly shown and not disputed in the evidence, that the 40 acres of land in controversy was the allotment of the plaintiff, and that a trust patent thereafter was issued to him on the 19th day of April, 1902, and recites that the same was issued under the act of Congress approved February 8, 1887, which trust patent recites that it was issued by virtue of section 5 of said act, subject to the restrictions and conditions contained in the said fifth section, and that the same will be held for the period of 25 years in trust for the sole use and benefit of the allottee, and at the expiration of said period the United States will convey the same by patent to said allottee or his heirs, in fee, discharged from said trust and free of all charge or incumbrances whatsoever; provided, that the President of the United States may, in his discretion, extend the said period. Also shows upon its face that said restricted period of 25 years expired on the 19th day of April, 1917.

The judgment from which this appeal was taken bears date of the 7th day of May, 1917.

The judgment of the court below, after decreeing to the defendant a divorce, the care, custody, and control of the minor children, describes the tract of land in controversy, and "decreed and ordered the same to the defendant as permanent alimony, and in settlement of the property rights of the parties to this action, and for her use in supporting herself and the above-named children."

The plaintiff's principal ground of complaint is that the court erred in decreeing the land to the wife as permanent alimony, his contention being that the court was without jurisdiction to so decree, inasmuch as the plaintiff had not received the patent for the land at the time of the trial, and the greater part of the argument and the authorities cited in his brief go to that proposition.

The question presented here for determination is, was the land in controversy, at the time of the rendition of the judgment complained of, restricted Indian land? If it were, then under all the authorities, including numerous decisions of this court, the trial court was without authority to make the award.

We have examined the authorities cited by the plaintiff, and find that they all treat the question of alienation of restricted Indian lands; that question is not involved, and hence the authorities are not in point unless we assume the question at issue to be as stated by the plaintiff.

The tract of land involved was, under the evidence, the allotment of the plaintiff made to him by the government of the United States on the 19th day of April, 1887. The trust patent issued to the plaintiff on that date was introduced in evidence, and, omitting the formal parts, is as follows:

"Whereas, there has been deposited in the General Land Office of the United States a schedule of allotments of a land, dated January 11, 1892, from the Acting Commissioner of Indian Affairs, approved by the Secretary of the Interior January 4, 1892, whereby it appears that under the provision of the act of Congress approved February 8, 1887 (24 Stat. 388), Wilber Johnson, an Indian of the Wyandotte Tribe or band has been allotted the following described land, viz.: The east half of the southeast quarter of the southeast quarter of section twenty-nine, and the east half of the northeast quarter of the northeast quarter of section thirty-two, all in township twenty-seven north, of range twenty-four east, of the Indian Meridian, Indian Territory, containing forty acres:

"Now, know ye that the United States of America, in consideration of the premises, and in accordance with the provisions of the fifth section of the said act of Congress of the 8th of February, 1887, hereby declares that it does and will hold the land thus allotted (subject to all restrictions and conditions contained in said fifth section) for the period of twenty-five years, in trust for the sole use and benefit of the said Wilber Johnson, or, in case of his decease, for the sole use of his heirs, according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian or his heirs, as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever; Provided, that the President of the United States may, in his discretion, extend the said period."

This instrument recites that a schedule of allotments of land dated January 11, 1892, had been deposited in the General Land Office of the United States, and approved by the Secretary of the Interior January 14, 1892, and that by virtue of which the trust patent was issued on April 19, 1892, and that the land thus allotted would be held (subject to all the restrictions and conditions contained in said fifth section) for the period of 25 years in trust for the sole use and benefit of the allottee, or, in case of his death, for the sole use of his heirs, and at the ex-

piration of said period the United States will convey the same by patent to said allottee in fee, discharged of said trust and free of all charge or incumbrance whatsoever.

Section 5 of the act of Congress approved February 8, 1887, c. 119, 24 Statutes at Large, 389 (U. S. Comp. St. § 4201), in so far as the same is pertinent, is as follows:

"That upon the approval of the allotments provided for in this act by the Secretary of the Interior, he shall cause patents to issue therefore in the name of the allottees, which patents shall be of the legal effect, and declare that the United States does and will hold the land thus allotted for the period of twenty-five years, in trust for the sole use and benefit of the Indian to whom such allotment shall have been made, or, in case of his decease, of his heirs according to the laws of the state or territory where such land is located, and that at the expiration of said period the United States will convey the same by patent to said Indian, or his heirs as aforesaid, in fee, discharged of said trust and free of all charge or incumbrance whatsoever; Provided, that the President of the United States may in any case in his discretion extend the period. And if any conveyance shall be made of the lands set apart and allotted as herein provided, or any contract made touching the same, before the expiration of the time above mentioned, such conveyance or contract shall be absolutely null and void."

The Supreme Court of the United States, in the case of United States v. Rickert, 188 U. S. 432, 23 Sup. Ct. 478, 47 L. Ed. 532, in an opinion by Mr. Justice Harlan construing this act, said:

"The word 'patents,' where it is first used in this section, was not happily chosen to express the thought which, it is clear, all parts of the section being considered, Congress intended to express. The 'patents' here referred to (although that word has various meanings) were, as the statute plainly imports, nothing more than instruments or memoranda in writing, designed to show that for a period of twenty-five years the United States would hold the land allotted, in trust for the sole use and benefit of the allottee, or, in case of his death, of his heirs, and subsequently, at the expiration of that period—unless the time was extended by the President—convey the fee, discharged of the trust and free of all charge and incumbrance. In other words, the United States retained the legal title, giving the Indian allottee, a paper or writing, improperly called a patent, showing that at a particular time in the future, unless it was extended by the President, he would be entitled to a regular patent conveying the fee. This interpretation of the statute is in harmony with the explicit declaration that any conveyance of the land, or any contract touching the same, while the United States held the title in trust, should be absolutely null and void. So that the United States retained its hold on the land allotted for the period of twenty-five years after the allotment, and as much longer as the President, in his discretion, should determine."

The Supreme Court of the United States in the case of James Goudy v. Edward Meath, Assessor of Pierce County, Wash., 203 U. S. 146, 27 Sup. Ct. 48, 51 L. Ed. 130, in an opinion by Mr. Justice Brewer construing the foregoing sections of said act of Congress with reference to both voluntary and involuntary sale of the Indian allotments provided for in said act, in the case arising in the state of Washington, where the land of the allottee was sought to be taxed after the expiration of the period of restriction on alienation had expired, said:

"But the contention is that although he has the power of voluntary sale and conveyance, yet until he has exercised that power the land is not subject to taxation or forced sale. * * * That Congress may grant the power of voluntary sale, while withholding the land from taxation or forced alienation, may be conceded. * * * But while Congress may make such provision, its intent to do so should be clearly manifested, for the purpose of the restriction upon voluntary alienation is protection of the Indian from the cunning and rapacity of his white neighbors, and it would seem strange to withdraw this protection and permit the Indian to dispose of his lands as he pleases, while at the same time releasing it from taxation; in other words, that the officers of a state enforcing its laws cannot be trusted to do justice, although each and every individual acting for himself may be so trusted. But, further, by the act of February 8, 1887, plaintiff became and is a citizen of the United States. That act, in addition to the grant of citizenship, provided that 'Indians to whom allotments have been made shall have the benefit of and be subject to the laws, both civil and criminal, of the state or territory in which they may reside.' * * * Among the laws to which the plaintiff as a citizen became subject were those in respect to taxation. His property, unless exempt, became subject to taxation, in the same manner as property belonging to other citizens, and the rule of exemption for him must be the same as for other citizens—that is, that no exemption existed by implication, but must be clearly manifested. No exemption is clearly shown by the legislation in respect to these Indian lands. The original treaty provided that they should be exempt from levy, sale, or forfeiture until the Legislature of the state should, with the consent of Congress, remove

the restriction. This, of course, meant involuntary as well as voluntary alienation. * * * Congress postponed the operation of this statute for 10 years. When the ten years expired (and they had expired before this tax was attempted to be levied), all restriction upon alienation ceased. It requires a technical and narrow construction to hold that involuntary alienation continues to be forbidden while the power of voluntary alienation is granted; and it is disregarding the act of Congress to hold that the Indian, having property, is not subject to taxation when he is subject to all the laws, civil and criminal, of the state."

The question determined in the Rickert Case, supra, was that allotments made under act approved February 8, 1887, were not subject to taxation for the year 1900, during the restricted period, while in the Goudy Case, supra, the same act was construed, the holding being that after the restricted period had expired the land was subject to alienation, either voluntarily or involuntarily, the language used, "The Indian may not only voluntarily convey his land, * * * but he may also permit its alienation by any action or omission which in due course of law results in forced sale."

We think that the foregoing rule announced is sound, and applies to the situation disclosed by the record before us.

The same learned judges, speaking for the court in the case of Benson Mining Co. v. Alta Mining Co., 145 U. S. 428, 12 Sup. Ct. 877, 36 L. Ed. 762, after reviewing the case of Witherspoon v. Duncan, 4 Wall. 210, 18 L. Ed. 339, and Deffeback v. Hawke, 115 U. S. 392, 6 Sup. Ct. 95, 29 L. Ed. 423, said:

"There is no conflict in the rulings of this court upon the question. With one voice they affirm that when the right to a patent exists, the full equitable title has passed to the purchaser, with all the benefits, immunities, and burdens of ownership."

In Wood v. Gleason, 43 Okla. 9, 140 Pac. 418, Mr. Justice Kane, who delivered the opinion of the court, stated in syllabus 1 the propositions of law thus:

"After all the requirements of the acts of Congress and the so-called agreements providing for the distribution of Indian lands have been complied with, the title of the allottee becomes fixed and absolute, and the execution and delivery of the patent, after the right has become complete, are the mere ministerial acts of the officers charged with that duty."

This, we think, is conclusive on that question, and we need not have gone beyond the decisions of our own courts on the question, but for the fact that counsel for the plaintiff in his brief has, by citations from United States cases, tried to convince us to the contrary. But his authorities, as we have before stated, fail to sustain his contention. The main question in the case before us may be thus stated: The restricted period against the alienation of the land of the allottee, as shown by the terms of the trust patent, had expired by its own limitation, before the date of the judgment rendered herein awarding the land to the defendant, and that after the expiration of that period the land was subject to alienation by the voluntary act of the allottee, and he may also permit its alienation by any action or omission which, in due course of law, results in forced sale. Such is the holding in the case of Goudy v. Meath, Assessor, supra, as announced by Mr. Justice Brewer, speaking for the court in that case, and is undoubtedly the law.

In our opinion there is no merit in the contention of the plaintiff. After April 19, 1917, the plaintiff was entitled to receive a patent in fee from the United States for the land, and that the same any time thereafter was subject to alienation as above stated; and we so hold.

It is said in 32 Cyc. 1029:

"The execution and delivery of a patent to a person entitled thereto are mere ministerial acts of the officers charged with that duty, and when the right to a patent becomes perfect the full equitable title passes to the purchaser or grantee, with all the benefits, immunities, and burdens of ownership."

The Supreme Court of the United States has held that:

"Where the right to a patent has become vested in a purchaser of public lands, it is equivalent, so far as the government is concerned, to a patent actually issued. The execution and delivery of a patent after the right to it has become complete are the mere ministerial acts of the officers charged with that duty." Barney v. Dolph, 97 U. S. 625, 24 L. Ed. 1063.

"The right to a patent, once vested, is treated by the government, when dealing with public lands, as equivalent to a patent issued. When, in fact, the patent does issue, it relates back to the inception of the right of patentee. After all the requirements of the acts of Congress and the so-called agreements providing for the distribution of Indian lands have been complied with, the title of the allottee becomes fixed and absolute, and the execution and delivery of the patent, after the right has become complete, are the mere ministerial acts of the officers charged with that duty." Ballinger v. Frost,

216 U. S. 241, 30 Sup. Ct. 338, 54 L. Ed. 464.

This court has held that:

"The patent is not creative of the right of the allottees, either to the land or to the exemption. If the patent is valid, it is so merely because it is in confirmation of previous existing rights." Wood v. Gleason, 43 Okla. 9, 140 Pac. 418.

See, also, to the same effect, Godfrey v. Iowa Land & Trust Co., 21 Okla. 293, 95 Pac. 792.

The execution and delivery of a patent to an Indian allottee by the Secretary of the Interior, after the right thereto had accrued, was compelled by mandamus in the case of Ballinger v. Frost, above cited (216 U. S. 241, 30 Sup. Ct. 338, 54 L. Ed. 464).

Section 4969, Rev. Laws, reads:

"When a divorce shall be granted by reason of the fault or aggression of the husband, the wife shall be restored to her maiden name if she so desires, and also to all the property, lands, tenements, hereditaments owned by her before marriage or acquired by her in her own right after such marriage, and not previously disposed of, and shall be allowed such alimony out of the husband's real and personal property as the court shall think reasonable, having due regard to the value of his real and personal estate at the time of said divorce; which alimony may be allowed to her in real or personal property, or both or by decreeing to her such sum of money, payable either in gross or in installments, as the court may deem just and equitable. As to such property, whether real or personal, as shall have been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties, respectively, as may appear just and reasonable, by a division of the property in kind, or setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof.

"In case of a finding by the court that such divorce should be granted on account of the fault or aggression of the wife, the court may set apart to the husband, and for the support of the children, issue of the marriage, such portion of the wife's separate estate as may be proper."

The section referred to provides that the amount of alimony awarded upon granting a divorce in favor of the wife should be such as is reasonable, having due regard to the value of the real and personal estate of the husband at the time the divorce is rendered, that the same may be allowed in real or personal property, or both, or by decreeing her such a sum of money upon the basis of a reasonable allowance of alimony as may be just and equitable.

"An appellate court which has acquired jurisdiction of an appeal in a divorce suit may dispose of the same by affirming, reversing, or modifying the decree appealed from." 14 Cyc. 737; Derritt v. Derritt, 66 Okla. 124, 168 Pac. 455.

The evidence fixed the value of the land at from $1,000 to $1,250, and further showed that neither the plaintiff nor defendant was possessed of any other property; that the plaintiff was working for wages, earning from $2.25 to $2.75 per day; they had been separated for five years; during all that time the defendant had been employed in government service at the Ponca Indian School as cook for eight years, where she had kept the minor children, supported for the most part by the government; however, that she contributed regularly to their support; that she earned $40 per month; that the plaintiff had contributed nothing to her or the children's support, but that she had sent the plaintiff money in small amounts from time to time; that for some time prior to 1912 the plaintiff also worked for the government at said school, but on said date he was discharged on account of his relations with an Indian girl, who was also employed as assistant cook in said school; since then he has rambled around; that shortly before he filed this action the defendant came to Oklahoma City to see the plaintiff about deeding her the land in controversy as a home for her and the children, which he refused to do; that she visited his apartments, where he was sick, and while there for a short time only she saw in his room female wearing apparel, consisting of slippers, etc., and saw on the dresser a picture of the plaintiff taken with a woman; in a few minutes the woman shown in the picture came into the room, and placed a package in a trunk, and did not stay but a moment.

Defendant testified:

"I asked him what he would do for the children, and he said he would do nothing. I asked him to give me a divorce; he said he had no money, and could not given me any."

The plaintiff's sister, a Mrs. Allen, and her husband, who has been in the government service for 25 years, and under whose supervision both the plaintiff and defendant had worked, both testified for the defendant, corroborated her testimony in toto, and as to her good character and industry, and contradicted the plaintiff on all material points, and testified to his indolence and shady rep-

utation; that he was discharged from the government service on account of his relations with a woman other than his wife.

The trial was had to the court. We have examined the entire record, and find that, while the evidence was conflicting, there was ample competent evidence to support the findings of the trial court upon the issues raised by the pleadings and determined by the court.

This court has frequently held that—

"In a contested divorce case, where the evidence is conflicting, and there is sufficient competent evidence to support the findings of the court and the decree based thereon, the same will not be disturbed" upon appeal. Stovall v. Stovall, 29 Okla. 125, 116 Pac. 791; Adams v. Adams, 30 Okla. 327, 120 Pac. 566; Penn v. Penn, 37 Okla. 650, 133 Pac. 207; Vick v. Vick, 45 Okla. 412, 145 Pac. 815.

We think that at the time the judgment was rendered the plaintiff was the equitable owner in fee of the 40 acres of land in controversy, and as such owner had the power to alienate or incumber the same at will, and that the trial court had the power to decree the same to the defendant as permanent alimony and future support for herself and the minor children. Germania Nat'l Bank v. Duncan et al., 62 Okla. 144, 161 Pac. 1077; Jones v. Jones, 63 Okla. 208, 164 Pac. 463, L. R. A. 1917E, 921; Davis v. Davis, 61 Okla. 275, 161 Pac. 190; Vick v. Vick, 45 Okla. 412, 145 Pac. 815.

We have examined the plaintiff's assignments of error from 1 to 4, inclusive, involving the actions of the trial court in denying motion for new trial, overruling motion to strike journal entry from the files, in admitting and rejecting testimony, and find that the same are without merit. Chicago, R. I. & P. Ry. Co. v. Austin, 63 Okla. 169, 163 Pac. 517, L. R. A. 1917D, 666.

The judgment is affirmed.