## REED v. REED.

No. 16185—Opinion Filed Feb. 16, 1926.

Rehearing Denied May 18, 1926.

### 1. Divorce — Appeal — Sufficiency of Evidence.

In a divorce case, where the evidence is conflicting and there is sufficient competent evidence to support the findings of the court and the decree based thereon, the same will not be disturbed on appeal.

### 2. Divorce—Extreme Cruelty Other Than Physical Violence—Requisites.

In an action for divorce, where the cause of action is predicated upon extreme cruelty, for conduct other than physical violence, it is not sufficient that there should simply be danger that such conduct, operating through the mental faculties, may produce injury or bodily hurt to the physical system,

but it must be shown that such in fact is the effect, or at least that such effect is to be reasonably apprehended as imminent as a result thereof. The remedy for absolute divorce is an extraordinary remedy for evils which are unavoidable and unendurable and which cannot be relieved by any proper or reasonable exertion by the parties seeking the aid of the court.

### 3. Divorce—"Gross Neglect of Duty."

Gross neglect of duty, within the meaning of section 501, C. O. S. 1921, is such a glaring, shameful, or monstrous neglect of marital duties as to be obvious from the common understanding and inexcusable under all the relevant facts in the case.

### 4. Divorce—Courts to Encourage Reconciliation.

Marriage is a contract and a relation which, if possible, should endure, and public polity requires that there be no straining of law or facts to end the contract and sever the relation. Courts, having ever in view the public good, may often wisely use their discretion to give time and opportunity for reconciliation.

### 5. Same—Refusal to Settle Property Rights Where Prospect of Reconciliation.

In a divorce action, where it appears that a reconciliation between the parties may occur and the defendant does not ask for a divorce, the action of the trial court, after refusing plaintiff a divorce, in refusing to settle the property rights between the parties will not be disturbed.

(Syllabus by Foster, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Johnston County; J. H. Linebaugh, Judge.

Action by Lucille Reed against Elbert G. Reed for a divorce, permanent alimony, and for the custody of her minor son. Judgment for defendant, and plaintiff appeals. Affirmed.

Cornelius Hardy, for plaintiff in error.

Robt. S. Kerr and J. F. McKeel, for defendant in error.

Opinion by FOSTER, C. The plaintiff in error, Lucille Reed, brought her action in the district court of Johnston county against the defendant in error, Elbert G. Reed, for an absolute divorce, the custody and control of plaintiff in error's minor son, for permanent alimony, and for a decree settling and adjusting certain property rights between the parties. The parties will be referred to hereinafter as plaintiff and defendant as they were designated in the trial court.

In her amended petition the plaintiff

charged the defendant with extreme cruelty and gross neglect of duty. The answer of the defendant was a general and specific denial of the matters charged in the plaintiff's petition, and concluded with a prayer that as long as plaintiff lived separate and apart from the defendant, defendant be granted such custody of their minor child as the court should deem proper. No divorce on behalf of the defendant was asked for by reason of any fault or aggression of the plaintiff. The trial court entered a general judgment in favor of the defendant denying plaintiff any relief prayed for in her petition, and until the further order of the court awarded the custody of the minor son of the parties to the plaintiff from the 1st to the 22nd of each month, and to the defendant from the 23rd to the last day of the month. Motion for a new trial was filed by the plaintiff, heard and overruled, exceptions allowed, and the case comes on regularly to be heard in this court on appeal by the plaintiff from said judgment.

The first proposition relied on by the plaintiff for a reversal of the judgment is that the trial court erred in refusing to grant the plaintiff a divorce on the ground of cruelty. The record discloses that plaintiff and the defendant were married at Sulphur, Okla., on the 18th day of September, 1919; that of this marriage one child survives, namely, Marvin Elbert Reed, a son, who at the time of the trial on July 11, 1924, was about four years old; that plaintiff and defendant lived together as husband and wife in Ada, Okla., until the 22nd day of June, 1923, at which time the plaintiff returned to her parents at Tishomingo, where she resided continuously until the trial.

There is no conflict in the evidence that until the fall of 1921 the defendant conducted himself properly and was without fault. The plaintiff testified that about this time he began to be abusive toward plaintiff and neglectful of his marital duties, which finally culminated on June 22, 1923, in the defendant brandishing a pistol and threatening to kill some of her people and in cursing her and other members of her family; that during this time defendant frequently cursed in the presence of plaintiff and was guilty of a general course of cruel and inhuman conduct toward the plaintiff which rendered her condition intolerable. The record further discloses that when the parties married in 1919, the defendant was night mechanic employed by the Dodge Motor Company of Ada at a salary of $100 per month, and that he retained this position for some nine months thereafter. It appears that the

defendant then engaged in the transfer business at Wichita Falls, Tex., for a while, finally closing out his business there and returning to Ada. He then acquired the ownership of a tailoring business in Ada, going in debt considerably therefor, and it was during the time that defendant was conducting the tailoring business that most of the difficulties between the parties arose. The tailoring business was not a success, and after the defendant had paid some $1,200 on the purchase price therefor, a mortgage was finally foreclosed, whereby his business was sold, leaving a deficiency judgment against him including attorneys' fees of some $400.

The defendant denied that he had ever been cruel to the plaintiff; denied that he had ever cursed her or used or threatened to use any physical violence whatever upon plaintiff, and testified that he had always conducted himself as a faithful husband should. The evidence discloses that from the time plaintiff and defendant married until their separation, plaintiff's mother was a frequent visitor in their home and that the plaintiff frequently visited her father and mother in Tishomingo. It was the defendant's theory that plaintiff's mother, aided by other members of her family, entered, soon after their marriage, upon a course of conduct designed to bring about the separation of plaintiff and defendant, and that the separation which finally took place was the result of such unlawful conduct upon the part of plaintiff's mother; that any violence threatened or profane language used by him was provoked by and directed to the members of plaintiff's family, who were conspiring together to wrest from him the custody and control of his minor son, and that in carrying out this conspiracy, on the 22nd day of June, 1923, while plaintiff was packing her personal effects and preparing to accompany her brother, Russell, to Tishomingo, defendant did take a pistol from the dresser drawer in the presence of his wife and a hired girl, saying that he would kill any of her "G___ d___" people that tried to get the baby, and that this was the only profane language he ever used in the presence of his wife or any other woman. There is evidence in the record from a number of disinterested witnesses, that defendant, during the year immediately preceding the separation, was a devoted father and that he was kind and considerate to the plaintiff.

The trial court rendered a general judgment in favor of the defendant. While the evidence introduced was conflicting, it had before it the witnesses testifying for both

sides, observed their demeanor on the stand, and after hearing and considering all of the evidence introduced, rendered its judgment in favor of the defendant, as stated. Whether from the conflicting evidence the trial court found, as a matter of fact, that defendant's testimony was true and that he had not been guilty of cruelty in any form, or whether it found, as a matter of law, that defendant could not be guilty even if the matters testified to by the plaintiff were true, its judgment must in either case be sustained.

The rule has been announced in a number of cases as follows:

"In a contested divorce case, where the evidence is conflicting, and there is sufficient competent evidence to support the findings of the court and the decree based thereon, the same will not be disturbed on appeal." Johnson v. Johnson, 72 Okla. 155, 179 Pac. 595; Stovall v. Stovall, 29 Okla. 125, 116 Pac. 791; Barker v. Barker, 99 Okla. 103, 218 Pac. 812; Large v. Large, 95 Okla. 284, 219 Pac. 292.

Furthermore, we are unable to find from plaintiff's own version of defendant's conduct and her own reactions therefrom, any evidence of that extreme type of cruelty mentioned in the statute, which would justify an absolute divorce under the rule announced by the authorities in this jurisdiction.

Testifying in her own behalf, the plaintiff testified as follows:

"Q. He never did call you any bad names? A. I suppose I was included in the Chapman family. Q. He never did say you were so and so? A. Only a liar. * * * Q. When was the first time (he drew a pistol on you)? A. First time he tried to was in February, 1922. Q. Was you scared of him? A. No. I was not scared of him. Q. Wasn't you afraid he was going to shoot you? A. No. sir; not a bit. I—never did run over me. Q. Was not afraid of him? A. No, sir; not a bit. * * * Q. You knew he was bluffing you? A. I knew he was not going to kill me. Q. You called his bluff. A. Yes, I did that because he threatened me too many times. * * * Q. When he drew this pistol, did he say he was going to shoot you? A. No, sir; he just drew it on me, and said he was taking baby off, and that I need not come after him, and that he would kill anybody I sent for him. * * * Q. Did he threaten to shoot you with that gun? A. He did not say he was going to kill me. * * *"

On the occasion of the altercation of June 22, 1923, when plaintiff left the defendant the hired girl testified as follows:

"Q. What did he (the defendant) do to you? A. He said for me to shut my 'G____

d____' mouth, or he would put me out of the house, and he got hold of me and tried to put me out. Q. Did you get out? A. No, Lucille made him stop."

There is no evidence in the record that the conduct alleged against the defendant operated through the mental faculties to the bodily hurt or injury to the physical system of plaintiff; on the contrary, it appears that she at all times maintained her mental equilibrium, and in the estimation of the hired girl on the occasion of the separation, had the defendant under perfect control.

In Barker v. Barker, 25 Okla. 48, 105 Pac. 347, it is said:

"The remedy of absolute divorce is an extraordinary remedy for evils which are unavoidable and unendurable, and which cannot be relieved by any proper and reasonable exertion of the party seeking the aid of the courts."

In the body of the above opinion the court said, quoting with approval this statement from Beach v. Beach, 4 Okla. 359, 46 Pac. 514:

"* * * Where the conduct complained of operates primarily upon the mind, producing mental pain, it is not sufficient that there should be simply danger that such conduct, thus operating through the mental faculties, may produce injury to the physical system or bodily hurt; but it must be shown that such in fact is the effect, or, at the least, that such effect may be reasonably apprehended as the result of the conduct.* * *"

Continuing, the court, speaking through Justice Dunn, uses this language:

"The matters of which plaintiff complains in this action are not to our minds the character of action on the part of a spouse calculated to meet the statutory requirements of extreme cruelty. The legislators have not defined the term, but have left it to the judgment and discretion of the courts, but they did say, as plainly as they could, that mere cruelty alone would be inadequate to constitute this ground, and that, where cruelty was relied upon, it must arise to the dignity of being extreme cruelty. The suffering engendered must not arise from supersensitiveness merely, but from an actual wrong done. We doubt not that the defendant in this action was at times surly, uncongenial, and disagreeable, and that he was indifferent what effect his deportment had upon the feelings of those about him, but such actions on his part would not constitute grounds for divorce. Marriage is not, in contemplation of law, consummated to exist merely so long as both parties are congenial and agreeable."

While the evidence was conflicting, there was on this phase of the case ample competent evidence to support the findings of the trial court.

The next proposition urged is that the trial court erred in not granting the plaintiff a divorce on the grounds of gross neglect of duty. A careful examination of the record discloses that there was ample evidence to sustain the judgment of the trial court on this phase of the case. There is evidence in the record from a number of disinterested persons, that defendant's credit was good at a number of places in Ada, furnishing groceries and merchandise, and that the plaintiff purchased quantities of provisions for household use at such places, and that they were paid for promptly by the defendant at the end of each month. That during a period of something over a year prior to the separation they kept house in a modern residence of five rooms, which was located in the residential district, the defendant paying the rent therefor to the owner promptly in advance on the first of each month. That at the time of the separation defendant owed about $1,100 on the purchase price of the tailoring establishment, and in addition about $1,400 to a bank, all of which indebtedness was incurred during the marriage with the plaintiff and prior to their separation, and that he owned no property other than a town lot which was mortgaged in excess of its value.

While some of this evidence was disputed by the plaintiff, the trial court was fully justified in finding that the defendant had not been guilty of gross neglect of duty within the rule announced in the case of Beauchamp v. Beauchamp, 44 Okla. 634, 146 Pac. 30, where this court uses this language:

"The 9th subdivision of section 4545, Statutes of 1893 (section 4962, Rev. Laws 1910), makes 'gross neglect of duty' a ground for divorce. This use of the word 'gross' requires that the 'neglect of duty' must be so glaring, flagrant, shameful, or monstrous, under all the relevant facts of the case, as to be obvious to the common understanding and inexcusable." Smith v. Smith, 22 Kan. 699; Peabody v. Peabody, 104 Mass. 195.

It is next urged that the trial court erred after refusing plaintiff a divorce, in refusing to adjust the property rights between the parties. The case of Privett v. Privett, 93 Okla. 171, 220 Pac. 348, is cited as authority for the proposition that in cases where a divorce is refused both parties, the court has jurisdiction under the provisions of section 505, C. O. S. 1921, to make such order as may be proper for the equitable division of the property then owned by them. We have no criticism to make of the rule of law laid down in the case cited, and if the facts and circumstances in the instant case were sufficient to warrant it, we would have no hesitancy in making final settlement of the property rights between the parties.

The subsequent case of Swanda v. Swanda, 105 Okla. 160, 232 Pac. 62, is more in point on this proposition. There the trial court denied a divorce to both parties, but on appeal the Supreme Court found it was evident that a reconciliation could never be effected, granted a divorce on the cross-petition of the husband, and proceeded to settle the property rights between the parties in accordance with the principles of equity. But in the instant case the defendant is not asking a divorce by reason of any fault or wrong on the part of the plaintiff, and appears in this court stating that he desires a reconciliation with the plaintiff and urging that such reconciliation is not improbable. We are persuaded to believe, in view of a very careful examination of the record in this case, that there is no insurmountable difficulty in the way of a reconciliation of the parties, and that the passage of time will very likely soften the bitterness which has been aroused between them. It is the duty of the court, where it is possible, to encourage the reconciliation of parties rather than to divorce them. As was said by Justice Brewer in Smith v. Smith, 22 Kan. 490:

"Marriage is a contract, and a relation which, if possible, should endure, and public policy requires that there be no straining of law or facts to end the contract and sever the relation. Time will heal many estrangements, and bring together those whom temporary feeling has alienated. And courts, having ever in view the public good, may often wisely use their discretion to give time and opportunity for reconciliation."

In this view of the case we think it would be unwise to further complicate the situation by attempting to make a settlement of the very meager property rights possessed by the parties to the instant action, even if plaintiff should be found to be entitled to any relief on this score, and we feel that the ends of justice would be better served by adopting the view of the trial court and leaving the parties as they were before the action for divorce was instituted.

As to the custody and control of the minor son of the plaintiff and defendant during the time that they are living separate and apart, we conclude that the judgment of the trial court should not be disturbed. There is competent evidence in the record to support the judgment of the trial court to the effect that the defendant should be allowed the exclusive custody and control of the child from the 22nd to the last of each month. There is no support to be found in the record for the conclusion that the association of the defendant and the child would be detrimental

to the moral and material welfare of the child. This court has already entered an order requiring the defendant to pay plaintiff the sum of $5 per week for the support of the child during such time as the temporary custody of the child remains as it was fixed by the trial court. This order will not be disturbed.

Upon a survey of the entire record we are satisfied that the judgment of the trial court is correct and should be and is hereby affirmed.

By the Court: It is so ordered.

Note.—See under (1) 19 C. J. p. 193 §479. (2) 19 C. J. p. 48 §86; anno. 13 L. R. A. (N. S.) 222; 34 L. R. A. (N. S.) 759; L. R. A. 1915E, 161; 3 A. L. R. 993; 5 A. L. R. 712; 24 A. L. R. 918. 9 R. C. L. 341; 2 R. C. L. Supp. p. 783; 4 R. C. L. Supp. 602. (3) 19 C. J. p. 69 §§132-135. (4) 19 C. J. p. 20 §18. (5) 19 C. J. p. 192 §477.