MILDRED WENDT, APPELLEE, v. ROSE B. WENDT, APPELLANT.

FILED JULY 15, 1921.    No. 21658.

1. **Husband and Wife: ALIENATION OF AFFECTIONS: PROOF.** Where, in an action for the alienation of the affections of a husband, the proof clearly and satisfactorily shows that defendant's acts and conduct in the premises were not only intended to effect an alienation, but actually did accomplish that result, a verdict in favor of plaintiff will not be disturbed.

2. ———: ———: INSTRUCTION. In an action for the alienation of the affections of a husband, it is not error for the court to instruct the jury that, if the evidence shows that the defendant was "the willing recipient of the complaints" made by the husband to

defendant against his wife, "with the ultimate intention and ulterior purpose of alienating his affections," and that she, the defendant herein, "thereby caused him to abandon her, and deprived her of his affections, aid, comfort and society, she would be liable in this case."

APPEAL from the district court for Cuming county: WILLIAM V. ALLEN, JUDGE. *Affirmed.*

*F. D. Hunker* and *A. R. Oleson,* for appellant.

*Zacek & Nicholson, contra.*

Heard before LETTON, DAY and DEAN, JJ., GOOD and RAPER, District Judges.

DEAN, J.

Mildred Wendt sued to recover damages from defendant for the alienation of the affections of her former husband. She recovered a verdict and judgment thereon of $3,000, and defendant appealed.

Plaintiff and Arthur W. Wendt were married January 4, 1917, and lived together about a year and a half. Some time in May, 1918, marital differences arose between them that grew out of the misconduct of defendant, as alleged, whom plaintiff charges with having alienated the affections of her husband. She avers that defendant constantly and persistently forced her attentions and blandishments upon him, and that as a direct result of such attentions her former husband, in July, 1918, deserted her and went to live with defendant and subsequently obtained a divorce from plaintiff. Within four months thereafter defendant and her husband were married at Council Bluffs, Iowa, and within about six months defendant gave birth to a child. Plaintiff alleges that she tried by various means to induce her husband to return to her, and that upon his refusal she became greatly provoked. For this deprivation of the society and comfort of her former husband she prayed for $10,000 damages.

Mr. Wendt applied for the divorce in question and his then wife, plaintiff herein, filed a cross-petition. The

court found against her on her cross-petition and granted the decree to her husband on the grounds of extreme cruelty. The court, however, awarded the custody of their infant child, Arthur W. Wendt, Jr., to the plaintiff herein. In her petition in the present case plaintiff admits that, "in her constant endeavor to retain the affections of her then husband against the design of the defendant on his affections, * * * the plaintiff did at certain times, while in the heat of passion, assault her then husband and use strong language toward him in her efforts to counteract" defendant's designs. She alleges that the unseemly conduct of defendant, in the premises, so aggravated her that it threw her into a fit of passion, from time to time, and that it was while in this abnormal condition that she attacked her husband.

The defendant's answer herein avers that Wendt abandoned plaintiff because of her extreme cruelty, and denies that defendant alienated the affections of plaintiff's husband, and charges that she lost her husband's affection by her cruel treatment of him. With respect to the wedded life of plaintiff and Wendt it may be said that, except as to a few digressions, it ran smoothly so long as they lived together. Their child, Arthur W. Wendt, Jr., was born February 21, 1918. About March 22, 1918, they bought a home in West Point; both husband and wife contributing to the payment of the purchase price. Wendt, with some assistance from plaintiff's father, bought a garage and there engaged in the automobile business.

The testimony tends to show that the defendant and plaintiff's then husband met some time in May, 1918, and that in that month defendant remarked to plaintiff, in a significant manner, that Mr. Wendt was a very attractive person. This was the first intimation that she had of the defendant's designs upon her husband. She charges that defendant thereafter constantly sought the society of her husband. In July, 1918, she discovered a coolness in her husband's treatment of her, and avers that he then began

to stay out late at night; that his automobile was frequently seen parked in front of defendant's home in the evenings, and that subsequently defendant and Wendt met frequently at the post office and had clandestine meetings elsewhere. She testified that they were frequently seen riding together; that plaintiff became concerned about her husband's late hours and his conduct generally, and when she found out the real situation she was naturally embittered toward defendant and her husband and became angry and upbraided him for his insincerity; that when her husband finally left her she constantly endeavored by various means to win him back to his home; that, notwithstanding she was always repulsed by him, she went frequently to his place of business and entreated him to return. She conceded that when he refused to do so she made violent attacks upon him and spoke to him in an abusive manner; that the cruelty upon which the divorce decree was based consisted in the attacks that she made upon him while she was so distraught with grief over his conduct and the conduct of defendant that she could not control herself. The material evidence of plaintiff, with respect to defendant's conduct, was corroborated by six or more witnesses who lived in the immediate vicinity.

Defendant cites authorities going to show that in this class of cases there is no ground for action unless it clearly appears that the defendant has done something to win the affections of the enamored spouse. Even so; the law cited is not applicable to the facts before us. Without going into tiresome details it sufficiently appears that defendant's conduct was such that it would naturally attract the attention and the admiration of a vain, vacillating and insincere person. On this point the evidence amply supports the verdict.

That plaintiff was indiscreet in the strong arm methods she employed in her attempt to win again the affection of her erring husband, and that seem to savor of the stone age, appears, not only in the proofs, but is admitted in the

allegations of her petition as well. The evidence, however, was submitted to a jury of the neighborhood, and, under fair instructions, they found for her and against defendant. There is proof tending to show that defendant exercised subtle contrivances, wiles, and blandishments to win plaintiff's husband away from her. That she thereby succeeded in doing so is well established.

Complaint is made respecting some of the court's rulings on the admission and the rejection of evidence, and also with respect to certain observations that were made by the trial judge on the evidence while the case was being tried. Reversible error does not appear in the assignments. Certain of the instructions are also complained of. The instruction of which the most complaint is made correctly informs the jury that, if the evidence shows that defendant was "the willing recipient of the complaints" made by the husband to defendant against his wife, "with the ultimate intention and ulterior purpose of alienating his affections," and that she, the defendant herein, "thereby caused him to abandon her, and deprived her of his affections, aid, comfort and society, she would be liable in this case."

Other assignments of alleged error are pointed out that we do not find it necessary to discuss. The record presents an aggravated situation in which a measure of justice has been meted out. Reversible error does not appear. The judgment is. therefore in all things

AFFIRMED.