## HERMAN G. MULOCK, PLAINTIFF, v. B. GEORGE ULIZIO, DEFENDANT.

Decided May 27, 1925.

**Alienation of Wife's Affections—Defendant Assigns Seven Reasons For Making Rule Absolute—Reasons and Evidence Examined and No Ground Found For Either Setting Aside or Reducing Amount of Verdict.**

On defendant's rule to show cause.

Before Justices KALISCH, BLACK and CAMPBELL.

For the rule, *Bolte, Sooy & Gill* (*G. L. Cole,* of counsel).

*Contra, John C. Reed* (*Robert H. McCarter,* of counsel).

PER CURIAM.

A verdict for the sum of $25,000 was obtained by the plaintiff against the defendant in this court, at the Atlantic Circuit, in an action brought by the former against the latter, for alienating the affections of the plaintiff's wife.

The defendant obtained a rule to show cause, and assigns the following reasons relied upon for making the rule absolute:

1. The verdict is contrary to the weight of the evidence.

2. The verdict is manifestly the result of errors, prejudice and passion.

3. The verdict is excessive.

4. The court erroneously admitted evidence over the objection of the defendant, and erroneously refused to admit evidence offered by the defendant.

5. The court refused to charge, as requested, defendant's request to charge.

6. The court erroneously charged that, under the evidence, punitive damages might be awarded.

7. The court erroneously charged that the fact that there might be no love between the plaintiff and his wife constituted no defense in favor of the defendant.

Later, the defendant assigned and filed fifty reasons which are denominated amended reasons, which include the reasons above stated, but with more specificness, as is required.

In the brief reasons one, two, three and four are argued together. Reason four was amended so as to read: "The verdict of the jury is contrary to the charge of the court." These reasons require a consideration of the evidence adduced in the cause. Counsel of the defendant in his brief says: "The urgent reasons for a new trial are that the verdict is excessive and against the clear weight of the evidence."

The substance of the plaintiff's complaint is that the defendant contriving and wrongfully intending to injure the plaintiff, and to deprive him of the society and services of his wife, and to alienate and destroy her affection for him, unlawfully gained her affections; that he wrongfully enticed and procured the plaintiff's wife, unlawfully and against the plaintiff's will, to depart and remain absent from the plaintiff's home and society; that the defendant also wrongfully, and against the plaintiff's will, received, harbored and detained the plaintiff's wife; that thereby he lost the society and services of his wife.

A careful reading and consideration of the evidence leads us to the conclusion that the jury was warranted in finding that the defendant had alienated the affections of the plaintiff's wife and broken up his home.

Although the acquaintanceship between the defendant and the plaintiff's wife had its origin in a casual introduction through the plaintiff's son and not by the defendant's seeking, it brought with it in its results, according to the testimony, an end to the plaintiff's peace and domestic happiness. The defendant was invited by the plaintiff to take his meals with the latter's family instead of eating at restaurants. This the defendant did for a short time and then ceased, for the reason that he, being a married man, and there being grown-up daughters of the plaintiff in the household, his visits might

cause censorious talk.  The acquaintanceship between the defendant and the plaintiff's wife, innocent enough in its inception, ripened in a short time into a friendship, with hypnotic affect on her conduct.  It appears that shortly after the defendant's acquaintance with plaintiff's wife began, the defendant separated from his wife to whom he had been married only for a short time.  He made costly presents to the plaintiff's wife and gradually gained complete control over her, to the extent that she welcomed his visits and shunned those of her husband, confided in the defendant and followed his advice and direction in preference to that of her husband. The testimony discloses many facts and circumstances from which the only reasonable inference can be that the defendant had assiduously and insiduously labored to eradicate the last grain of respect and affection that the plaintiff's wife had for her husband.  The defendant's conduct, according to the testimony, towards the plaintiff's wife was of such a character as to lower her respect for her husband, and to raise himself, the defendant, in her esteem and affection.

The jury was warranted in finding from the evidence that the house in Pine Valley was the defendant's choice for the plaintiff's wife's residence and was under his control and management, and was maintained at the defendant's expense; that he visited there frequently and maintained the plaintiff's wife there.

The jury awarded $25,000 damages, which sum is claimed to be excessive and the result of passion and prejudice.

First, it is argued on behalf of the defendant that there was no alienation or affection for the reason that, because of the husband's conduct towards her, she had no affection for him.  She was a witness for the defendant and testified to alleged cruelties on part of her husband and toward her during her twenty-four years of married life.  But even if this be so, it was not a complete defense to the plaintiff's action, for he was entitled to recover damages for the loss of *consortium* and the services of his wife.  *Dey* v. *Dey*, 94 *N. J. L.* 342; *Davenport* v. *Holden*, 95 *Id.* 197.

Moreover, the plaintiff was not only entitled to recover compensation for the loss of the society and services of his wife, but punitive damages also, the amount of the latter resting largely in the sound discretion of a jury. We cannot say, after a careful perusal of the evidence, that the jury, in arriving at the result in this case, was influenced by prejudice, passion or partiality, and, therefore, the verdict, in this regard, will not be disturbed.

It is argued under point one, in the brief of defendant's counsel, that the verdict should be set aside because there was prejudicial error in the overruling by the trial judge of the following question put by defendant's counsel to the defendant on his direct examination: "*Q*. At that time were you trying to get them together?" The defendant was testifying to a visit made by him, accompanied by the plaintiff to the plaintiff's wife, and to conversations had with her regarding differences existing between herself and her husband, and to acting in the role of a peacemaker between the couple, all of which the defendant said he did at the instance of the husband. It is quite clear that the question, as put, sought the conclusion of the defendant predicated on his own acts and conversations had with the plaintiff's wife, which was the jury's province and not that of the witness, and, therefore, the question was properly overruled.

Counsel of defendant then asked the defendant this question: "The question was asked Mr. Mulock as to the conversation between his wife and himself on the occasion when you were there, and he stated that, in substance, that you said you didn't think it was proper for her to take three months to consider the matter, with what I think was the possible inference or implication that you were trying to keep them apart rather than to have them come together. I ask you which it was you were trying to do?" This question was overruled, and, we think, properly so.

The legal impropriety of this inquiry is palpable. It not only asks the witness for his opinion whether or not counsel of defendant has drawn a proper inference from the plaintiff's testimony as to what took place and was said, when the plain-

tiff and defendant visited the plaintiff's wife together, but also to what inference he, the defendant, drew from his own conduct and conversations with the plaintiff's wife.

The defendant was then asked by his counsel: "Q. What were you trying to do when you made the statement to Mrs. Mulock?" The question was objected to by counsel of plaintiff, and a colloquy ensued between the court and counsel and the inquiry was not further pursued, nevertheless, it is presented as one of the reasons why the verdict should be set aside. It does not appear that the question was overruled, and a fair inference from the record is that it was abandoned.

Next, under point two of defendant's brief, it is argued that the court erred in refusing to charge the defendant's request, which was as follows: "The jury would not be warranted in finding a verdict against the defendant on any one of the allegations contained in the complaint, based upon any act or transaction occurring before July 9th, 1923."

This request was properly refused. There was evidence of gifts made by defendant to the plaintiff's wife prior to that time, and even though the plaintiff was aware of that fact, and did not object, is no legal reason why those facts may not be considered by a jury on the question whether or not the defendant made these gifts for ulterior and improper motives, which were hidden from a confiding husband.

Under point three it is urged that the court erred in refusing to charge the defendant's request, which was as follows: "There is no direct evidence to support any of the causes of action set forth in the complaint, and there can be a recovery against the defendant only if the jury, by drawing reasonable inferences, can find that the fair weight of the evidence proves the allegations."

The court had fully charged the legal rule on this phase of the case, and it was not a duty incumbent upon the judge to charge in the form of the request presented by counsel. *Consolidated Traction Co.* v. *Chenowith,* 61 *N. J. L.* 554.

We have examined the reasons presented under points five and six and find them destitute of merit.

The rule to show cause is discharged, with costs.