## MOORE v. GRIMES.

No. 22329. Sept. 11, 1934.

Joe S. Eaton and Edward J. Gilder, for plaintiff in error.

A. N. Soliss and H. S. Samples, for defendant in error.

RILEY, C. J. This is an appeal from a judgment in an action brought by defendant in error for the alleged alienation of the affections of her husband, Joe Grimes, by plaintiff in error, Janet Moore. The parties will be referred to as in the trial court.

Defendant first contends that the court erred in overruling her demurrer to plaintiff's amended petition.

The authorities cited do not support her contention.

The record discloses that in 1928, plaintiff lived with her husband at Compton, Cal., that defendant then lived in Henryetta, Okla.; that about August, 1928, plaintiff's husband's father, whose residence was next door to that of the defendant, died. Plaintiff's husband came from California to Henryetta to attend the funeral. He first met defendant about six o'clock a. m., the day of the funeral, and left that night at ten o'clock.

During that time he had some conversation with defendant about her going to California. There is no evidence of any improper conduct during that visit. They corresponded some thereafter, and about November, 1928, plaintiff's husband sent defendant $75 towards paying her expenses to California. She went by automobile with another woman. At El Paso defendant wired plaintiff's husband for more money and he wired her $15 at Phoenix, Ariz. Plaintiff's husband met defendant at San Bernardino, Cal. He paid her hotel bill there. Next day he went with her to Long Beach, where they stayed one night, he again paying her hotel bill. They went from there to Catalina Island, spent the day there, and from there to Compton. There he secured a small house for defendant and her companion, he paying the rent. There defendant became ill and plaintiff's husband hired a nurse for her for a week or more. About December 31st defendant left Compton and went to Oakland. From there she returned to Oklahoma about January 6 or 11, 1929. Plaintiff's husband paid the expense of the return trip. It appears that during this time plaintiff had no knowledge of what was going on between her husband and the defendant. About January 29, 1929, plaintiff found a letter in her husband's pocket which he had written to defendant and had placed in an envelope addressed to plaintiff. Therein she found two envelopes which were addressed to her husband at Wilmington, Cal. After reading the letter she conceived the idea that defendant was probably writing to her husband and that her husband was sending self-addressed envelopes for that purpose, having the letters sent to Wilmington instead of Compton. Thereafter she went to Wilmington and inquired for mail for her husband. The result was that she obtained two rather endearing letters written by defendant to her husband. One of these was dated January 27, 1929, and the other April 21st. When the husband was confronted with the letters he had written to defendant, he admitted to plaintiff substantially all the foregoing facts, and told her that the letters which plaintiff had taken from the post office at Wilmington were written by defendant. She was permitted, over the objections of defendant, to testify to what her husband had told her.

Defendant earnestly contends that the admission of this hearsay evidence was reversible error. That such evidence was in-

admissible in the first instance as substantive evidence to show defendant's guilt must be conceded. 30 C. J. 1139. The admission of such evidence might require a reversal except for the fact that defendant herself saw fit to take the witness stand in her own behalf and testified to the same facts. Her story was substantially in all particulars the same as that told by the husband to plaintiff and related by plaintiff on the witness stand.

It is well settled that this court is not authorized to reverse a cause on the erroneous admission or rejection of evidence, unless after an examination of the entire record it appears to the court that the error complained of has probably resulted in a miscarriage of justice or constitutes a substantial violation of a constitutional or statutory right. C., R. I. & P. Ry. Co. v. Cotton, 62 Okla. 168, 162 P. 763; Johnson v. Johnson, 72 Okla. 155, 179 P. 595; Clover v. Neely, 116 Okla. 155, 243 P. 758; Menten v. Richards et al., 54 Okla. 418, 153 P. 1177.

In the latter case it is held in effect that error may not be based upon the admission of incompetent evidence of a fact which is admitted by the other party to be true.

Defendant requested certain instructions which were refused by the court, and it is contended that the refusal was error. The instructions requested were applicable only in cases where the plaintiff sues the parent or parents, or those standing in the relation of parents, of the husband, or wife, whose affections were alleged to have been alienated. There is a clear distinction between a case of this kind against the parent and one against a stranger. Parents are under obligation by the law of nature to protect their children from injury and relieve them when in distress. Their natural affections prompt them to interest themselves in the welfare of their children. Hisler v. Hisler (Iowa) 127 N. W. 823.

A much stronger showing as to malice and intent is required in an action against a parent than in one against a stranger. But it has been held that an actual intent to alienate is not necessary if defendant's acts are inherently wrong and seductive and tend to and do have the effect complained of. 30 C. J. 1122.

The principal defense was that defendant did not learn that Joe Grimes was married until sometime in December while she was in California, and that upon learning that he was married, she undertook to break and did break the relation theretofore existing between her and the plaintiff's husband, and, therefore, could not be guilty of intentionally alienating the affections of plaintiff's husband. But, on January 27, 1929, and April 21, 1929, defendant in letters to plaintiff's husband made statements that warrant a contrary view. The last letter may have been after the separation of plaintiff from her husband, and may have been after the complete alienation of the husband's affections from his wife, but it tends strongly to refute her claim that she had given up her relations with plaintiff's husband after she learned that he was married.

It was not error to refuse the instructions requested.

Judgment is affirmed.

CULLISON, V. C. J., and ANDREWS, OSBORN, and BUSBY, JJ., concur.